**Ramsford BARRETT, et al.,**
**Plaintiffs–Appellants,**

v.

**ADAMS FRUIT COMPANY, INC.,**
**Defendant–Appellee.**

No. 88–3121.

United States Court of Appeals,
Eleventh Circuit.

March 15, 1989.

Nora Leto, Bartow, Fla., Mivoshi D. Smith, Lipman & Weisberg, Miami, Fla., Florida Rural Legal Services, Inc., West Palm Beach, Fla., for plaintiffs-appellants.

Bonita L. Kneeland, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, Fla., for defendant-appellee.

Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

VANCE, Circuit Judge:

This case requires us to determine whether the Migrant and Seasonal Agricultural Worker Protection Act, Pub.L. No. 97–470, 96 Stat. 2584 (1983) (codified at 29 U.S.C. §§ 1801–1872), ("the Act") preempts the exclusive remedy provision of Florida's workers' compensation laws, Fla.Stat.Ann. § 440.11 (West 1981). For the reasons set forth below we conclude that the private cause of action provision of the Act, 29 U.S.C. § 1854, preempts the Florida statute. Therefore, the receipt of workers' compensation benefits does not bar a private suit under the Act for actual or statutory damages.

## I.

On May 8, 1985 plaintiffs, a group of farm workers, were injured in an accident while being transported in a van owned by their employer, Adams Fruit Company, Inc. ("Adams"). Plaintiffs received workers' compensation benefits pursuant to Florida law. They sued Adams under 29 U.S.C. § 1854. In their complaint plaintiffs alleged that the accident occurred and that their injuries were aggravated because Adams violated the Act and its implementing regulations by transporting plaintiffs in an unsafe van loaded beyond its seating capacity, by failing to provide a seat belt for each passenger and by failing to secure water storage containers transported in the van. Pursuant to section 1854 plaintiffs sought declaratory and injunctive relief and damages "equal to the amount of actual damages they suffered as a result of defendant's violations of the [Act] or statutory damages of $500 per plaintiff per violation of the Act and its implementing regulations, whichever is greater."

Plaintiffs here appeal from the grant of summary judgment in favor of Adams as to its liability for actual or statutory damages due to violations of the Act's transportation safety requirements. The district court concluded that plaintiffs' claims for actual or statutory damages under the Act were barred by Fla.Stat. § 440.11, which provides in part that "[t]he liability of an employer ... shall be exclusive and in place of all other liability of such employer ... to the employee ... and anyone otherwise entitled to recover damages from such employer at law or in admiralty...." The district court relied on a Department of Labor regulation which provides that "[w]here a State workers' compensation law is applicable and coverage is provided for a migrant or seasonal agricultural worker by the employer, the workers' compensation benefits are the exclusive remedy for loss under this Act in the case of bodily injury or death." 29 C.F.R. § 500.122(b). The district court was also persuaded by the recent decision of the fourth circuit that the Act was not intended to preempt state workers' compensation laws. *Roman v. Sunny Slope Farms, Inc.*, 817 F.2d 1116 (4th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 163, 98 L.Ed.2d 117 (1987).

The parties settled their claims for statutory penalties for other violations of the Act. This appeal followed.

## II.

There are several ways in which a state statute may be preempted by a federal law and thereby rendered invalid under the Supremacy Clause.

First, when acting within constitutional limits, Congress is empowered to preempt state law by so stating in express terms.... Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation....

As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with the federal law. Such a conflict occurs either because "compliance with both federal and state regulation is a physical impos-

sibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)....

*California Fed. Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 280–81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (citations omitted). Neither the first nor second basis of preemption is present here. In passing the Act, Congress expressly recognized and left room for state regulation. Section 1871 provides that "[t]his chapter is intended to supplement State law, and compliance with this chapter shall not excuse any person from compliance with appropriate State law and regulation." 29 U.S.C. § 1871.

To determine whether the Florida statute is preempted under the third basis we must ascertain the purposes and objectives of the Act.[1] This involves questions of statutory construction. Thus, the deference with which we would ordinarily treat administrative regulations is not appropriate. *See Immigration and Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 447–48, 107 S.Ct. 1207, 1221–22, 94 L.Ed.2d 434 (1987) (" 'The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent....' ") (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984)).

### A.

We begin by examining the background of the Act. The legislative history is complex, reflecting repeated Congressional attempts to strengthen enforcement and broaden protections to migrant and seasonal farmworkers. The Act's predecessor, the Farm Labor Contractor Registration Act, Pub.L. No. 88–582, 78 Stat. 920 (1963) ("FLCRA") (repealed in 1983 by the Act), was enacted in 1963 in response to problems of farmworker exploitation and abuse. *See* S.Rep. No. 202, 88th Cong., 2d Sess. *reprinted in 1964 U.S.Code Cong. & Admin.News,* 3690, 3692. This act established a system of federal registration for interstate farm labor contractors and required them to keep detailed payroll records for each worker, to disclose truthfully to farmworkers information about the area of employment, crops, wage rates, housing and transportation to be provided, and to obtain insurance covering the transportation of these workers. The Secretary of Labor was responsible for enforcement. *See* Farm Labor Contractor Registration Act, §§ 5, 6, 7, *reprinted in 1964 U.S.Code Cong. & Admin.News,* 1048, 1050–52.

By 1974, testimony before Congress made clear that the FLCRA needed strengthening.[2] As a result, Congress amended the FLCRA to broaden coverage and strengthen enforcement. In order for farm labor contractors to receive a certifi-

---

**1.** We cannot agree with the fourth circuit that section 1871 compels a conclusion of non-preemption. *See Roman v. Sunny Slope Farms, Inc.,* 817 F.2d at 1118–19 (4th Cir.1987). Reading this section with section 1841(c), which permits workers' compensation coverage to be used to satisfy insurance requirements under the Act, the fourth circuit concluded that "§ 1841 shows that Congress was cognizant of state workers' compensation laws, for [the Act] was in that instance written in view of and to mesh with the state laws, and not to interfere [sic] or supersede them." *Id.* at 1119. We believe that by allowing workers' compensation insurance to be used to satisfy the insurance or liability bond requirement of the Act, Congress did not thereby foreclose all possible methods by which state workers' compensation laws might be preempt-

ed. We therefore must consider whether the third basis of preemption is present.

**2.** The Senate report accompanying the 1974 amendments to the FLCRA noted that "[i]t has become clear that the provisions of the Act cannot be effectively enforced. Non-compliance by those whose activities the Act were intended to regulate has become the rule rather than the exception. ... It is quite evident that the Act in its present form provides no real deterrent to violations." *See* S.Rep. No. 93–1295, 93rd Congress, 2d Sess., *reprinted in 1974 U.S.Code Cong. & Admin.News,* 6441, 6443. The lack of a private remedy for aggrieved workers was cited as one of the reasons for the ineffective enforcement of the FLCRA. *Id.*

cate of registration from the Secretary of Labor, they were required to show proof of vehicle insurance and to demonstrate that their vehicles and property complied with federal and state health and safety standards. The 1974 amendments created a federal cause of action for damages by persons aggrieved by violations of the FLCRA or its regulations. The amendments raised the maximum criminal penalties and empowered the Secretary of Labor to seek injunctive relief and impose civil penalties. *See* Farm Labor Contractor Registration Act Amendments of 1974, Pub.L. No. 93–518, *reprinted in 1974 U.S. Code Cong. & Admin.News* 1899, 1903–1905. The amended act was silent as to the extent to which state workers' compensation insurance could be used to satisfy the minimum insurance requirements.

In 1978[3] congressional hearings were held to examine a number of proposed amendments to the FLCRA and to discuss the manner in which the Department of Labor was administering the act. One proposed bill, H.R. 10631, would have amended section 5(a)(2) of the FLCRA to provide:

If such applicant has filed proof satisfactory to the Secretary [of Labor] of the existence of a policy of workmen's compensation insurance which insures the payment of workmen's compensation benefits under State law for personal injury or death to migrant workers by accident arising out of and in the course of their employment in connection with his business, activities, or operations as a farm labor contractor, the policy of vehicle liability insurance provided by him

shall conform to the exclusive remedy provisions of the State workmen's compensation law.

H.R. 10631, 95th Congress, 2d Sess., *reprinted in Farm Labor Contractor Registration Act: Hearings on H.R. 8232, H.R. 8233, H.R. 8234, H.R. 8249, H.R. 8894, H.R. 10053, H.R. 10631, H.R. 10810, H.R. 10922 Before the Subcomm. on Economic Opportunity of the Comm. on Educ. and Labor*, 95th Cong., 2d Sess. 4 (1978) [hereinafter *"Hearings"*]. Representative Ireland, the sponsor of this bill, explained that this provision was to prevent courts from allowing "double dipping" by agricultural workers. *See Hearings* at 34. Representatives from the Department of Labor opposed this amendment,[4] as did farmworker representatives.[5] Congress rejected this amendment.[6]

Dissatisfaction with the FLCRA continued. In 1982 Congress repealed this act and passed the Migrant and Seasonal Agricultural Worker Protection Act. The House Report accompanying this bill noted that under the FLCRA employers were treated in a "haphazard, burdensome, and often conflicting manner" and concluded that the FLCRA had "failed to reverse the historical pattern of abuse and exploitation of migrant and seasonal farmworkers and that a completely new approach must be advanced." H.Rep. No. 97–885, 97th Cong., 2d Sess. 1, 2–3, *reprinted in 1982 U.S. Code Cong. & Admin.News* 4547, 4548–49. The new act regulated agricultural employers and associations directly.[7] Congressional action was motivated in part by evidence of continuing abuses in

---

**3.** The FLCRA was slightly amended twice in 1976. These amendments are not relevant here. *See* Pub.L. No. 94–259 § 2, 90 Stat. 314 (1976); Pub.L. 94–561 § 6, 90 Stat. 2644 (1976).

**4.** We have always taken the position that the employer-employee relationship is not a factor in the application of the Farm Labor Contractor Registration Act. ... The exclusive remedy provisions of the workers' compensation coverage rely on the employer-employee relationship and are more restrictive than the protection provided in the act. We therefore are of the view that workers' compensation protection required under State law is not a substitute for the vehicle liability insurance protection under the act.

*Hearings* at 56–57 (statement of Donald Elisburg, Assistant Secretary of Labor).

**5.** *See, e.g., id.* at 140 ("The proposed amendment exposes workers once again to all manner of unsafe transportation and should be rejected.") (statement of Michael R. Masinter, Director of Litigation, Florida Rural Legal Services, Inc.).

**6.** The 1978 amendments to the FLCRA relate only to the scope of coverage of this act. *See* Perishable Agricultural Commodities Act, Pub.L. No. 95–562 § 4, 92 Stat. 2381, 2382 *reprinted in 1978 U.S. Code Cong. & Admin.News.*

**7.** Representative Ford, a co-sponsor of the Act in the House, emphasized the significance of

the unsafe transportation of workers.[8] The Act requires migrant and seasonal labor employers and contractors to comply with two separate protections relating to transportation: to ensure that vehicles used to transport workers are operated by licensed drivers and comply with safety standards promulgated by the Secretary of Labor and to provide insurance coverage for the workers while they are being transported. *See* 29 U.S.C. § 1841(a), (b). Subsection (c) of this section provides that:

> If an agricultural employer, agricultural association, or farm labor contractor is the employer of any migrant or seasonal agricultural worker for purposes of a State workers' compensation law and such employer provides workers' compensation coverage for such worker in the case of bodily injury or death as provided by such State law, the following adjustments in the requirements of subsection (b)(1)(C) of this section relating to having an insurance policy or liability bond apply:
>
> (1) No insurance policy or liability bond shall be required of the employer, if such workers are transported only under circumstances for which there is coverage under such State law.
>
> (2) An insurance policy or liability bond shall be required of the employer for circumstances under which coverage for the transportation of such workers is not provided under such State law.

*Id.* § 1841(c). Research revealed no debate surrounding this language.

Central to the Act's enforcement is the provision for a private right of action for violations of the Act. If a court finds that the defendant has intentionally violated the act or regulations, "it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation...." 29 U.S.C. § 1854. A co-sponsor of the Act in the House predicted that this provision would be "the most important deterrent against the continued abuse of migrant and seasonal farmworkers. As budget cuts undermine the Federal Government's ability to enforce the law, farmworkers will depend increasingly on the private bar and legal service organizations to insure that violations are punished and that they are made whole for their losses and sufferings." 128 Cong.Rec.H. 10456 (daily ed. Dec. 20, 1982) (statement of Rep. Ford).[9]

### B.

▇▇ Both the goal of preventing unsafe transportation practices and the role of pri-

---

this change. "For the first time, agricultural employees will, under Federal law, have a right to statutory damages from their employer if he furnishes unsafe housing or transportation.... The [Act] corrects the key weakness of the FLCRA, which held only the farm labor contractor responsible for such abuses and shielded the employer unless he fell within the narrow definition of 'farm labor contractor' under that act." 128 Cong.Rec.H. 10456 (daily ed. Dec. 20, 1982).

**8.** The House report cited as an example of migrant worker abuse an instance in which forty-seven farmworkers were seriously injured when the flat-bed grain truck in which they were being transported overturned. H.Rep. No. 97–885, *reprinted in 1982 U.S.Code Cong. & Admin. News,* 4547, 4549. Testimony during the 1978 hearings suggested that workers' compensation benefits were available to workers injured in this accident but criticized benefit levels as inadequate. *Hearings* at 132 (testimony of Burton Fretz).

**9.** Courts have widely recognized the deterrent role of damage awards in suits for violations of the Act's predecessor, the FLCRA. For example

in *Montelongo v. Meese,* 803 F.2d 1341, 1350 (5th Cir.1986), *cert. denied sub nom. Martin v. Montelongo,* 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed. 2d 835 (1987), the fifth circuit rejected an argument that a liquidated damages award for violations of the FLCRA was too high because it exceeded the amount plaintiffs could have earned if their agreement had been honored. The court noted that the civil remedy was designed to promote enforcement of the FLCRA and deter abuses. *See also Rivera v. Adams Packing Ass'n, Inc.,* 707 F.2d 1278, 1282 (11th Cir.1983) ("the creation of a private cause of action ... indicates that Congress intended to provide additional means of enforcing [the FLCRA]."); *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1332 (5th Cir.1985) (civil remedy provision of FLCRA "is not restricted to compensation of individual plaintiffs. It is designed also to promote enforcement of the Act and thereby deter and correct the exploitive practices that have historically plagued the migrant farm labor market.").

vate suits in enforcing worker protections convince us that applying Fla.Stat. § 440.11 to bar private suits for violations of the Act when transportation is covered by workers' compensation insurance would frustrate congressional intent. Many of the transportation safety protections set forth in the Act and regulations would become effectively unenforceable.[10] Once an employer obtained workers' compensation coverage, he or she would have little incentive to comply with the transportation safety requirements set out in the Act and its regulations. *See, e.g., Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1332 (5th Cir.1985) ("Plainly, it ought not to be cheaper to violate [the FLCRA] and be sued than to comply with the statutory requirements."). We therefore conclude that the exclusive remedy provision in Fla.Stat. § 440.11 is preempted because it stands as "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Marketing & Bargaining Bd.,* 467 U.S. 461, 478, 104 S.Ct. 2518, 2527, 81 L.Ed.2d 399 (1984); *Fidelity Federal Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 156, 102 S.Ct. 3014, 3024, 73 L.Ed.2d 664 (1982). *Cf. Rosa v. Cantrell,* 705 F.2d 1208, 1221 (10th Cir.1982), *cert. denied,* 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983) (42 U.S.C. § 1983 preempts exclusive remedy provision of Wyoming's workers' compensation law).

We cannot agree with Adams that section 1841(c) demonstrates that Congress intended for workers' compensation benefits, where available, to be the exclusive remedy for injuries resulting from violations of the transportation safety requirements of the Act. This subsection relates to minimum insurance coverage, only part of the protections covering transported workers in the Act. Congress was well aware of the possibility of "double dipping." *See, e.g., Hearings* at 134. We believe that if Con-

gress had intended to restrict significantly the availability of such a key ingredient as the private right of action it would have done so directly.

■ Appellee argues that our conclusion would violate the rule applied in *United States v. Demko,* 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) that "where there is a compensation statute that reasonably and fairly covers a particular group of workers, it presumably is the exclusive remedy to protect that group." *Id.* at 152, 87 S.Ct. at 384 (citing *Johansen v. United States,* 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952)). *Demko* held that a prisoner who had been injured in the performance of his assigned prison tasks and received compensation under 18 U.S.C. § 4126 could not also sue under the Federal Tort Claims Act. "[T]o hold that the 1946 Federal Tort Claims Act was designed to have such a supplemental effect would be to hold that injured prisoners are given greater protection than all other government employees ..., a congressional purpose not easy to infer." *Demko,* 385 U.S. at 152, 87 S.Ct. at 384. *Demko* involved claims under two federal statutes. In contrast, this case involves claims under a federal and state statute. Moreover, the legislative history and background of the Act provide strong support for the inference that Congress intended to provide heightened protection for migrant and seasonal agricultural workers. Thus, allowing these workers to proceed under the Act even though they have received workers' compensation benefits does not violate the *Johansen* rule.

■ Appellee finally argues that it would be contrary to congressional intent and unfair to allow double recovery under workers' compensation laws and a suit for actual or statutory damages under the Act. We note that workers' compensation benefits do not compensate workers for their full actual damages. *See, e.g.,* Fla.Stat. §§ 440.15–.16 (compensation capped at

---

**10.** *See supra* note 2.

66⅔% of average wage). The legislative history of the Act, however, indicates that Congress intended for migrant and seasonal farmworkers to recover fully for injuries caused by violations of the Act.[11] Double recovery can be prevented by considering the factors discussed in *Beliz*, 765 F.2d at 1333. There the court noted that "[i]n fixing damages the court may consider.... the plaintiffs' recovery on closely related claims joined in the same suit that will in part compensate the damages caused by violations of the Act." A claim for workers' compensation benefits would, of course, not be joined in a suit under the Act. Evidence of the amount of workers' compensation benefits received, however, can be considered in calculating the amount of actual damages to be awarded pursuant to section 1854.

We therefore conclude that section 1854 of the Act preempts Florida Stat. § 440.11. The receipt of workers' compensation benefits thus does not bar a private suit for actual or statutory damages based on violations of the Act. The amount of workers' compensation benefits, however, may be considered in awarding actual damages.

Accordingly this case is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

**11.** In discussing the method by which technical violations are counted for the purpose of computing statutory damages, Senator Hatch, who introduced the Senate version of the Act, emphasized that "I want to make absolutely clear, however, that as I have stated earlier, full actual damages would be awarded in every case." 128 Cong.Rec.S. 15565 (daily ed. Dec. 19, 1982) (statement of Sen. Hatch). *See also Beliz*, 765

F.2d at 1332 & n. 68 ("Nor should a worker who sues for violations find recovery inadequate to cover his personal costs in filing suit, testifying, and paying attendant attorney's fees, recovery of which is not allowed by the [FLCRA]") (citing Senate report which notes that farmworkers must overcome a background of fear and intimidation in order to attempt to assert statutory rights).