ADAMS FRUIT CO., INC. *v.* BARRETT ET AL.

No. 88–2035.   Argued January 17, 1990—Decided March 21, 1990

MARSHALL, J., delivered the opinion for a unanimous Court.

*Bonita L. Kneeland* argued the cause for petitioner. With her on the briefs was *John W. Robinson.*

*Laurence H. Tribe* argued the cause for respondents. With him on the brief were *Brian Stuart Koukoutchos* and *Nora Leto.**

JUSTICE MARSHALL delivered the opinion of the Court.

In this case we must decide whether exclusivity provisions in state workers' compensation laws bar migrant workers from availing themselves of a private right of action under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 96 Stat. 2583, as amended, 29 U. S. C. § 1801 *et seq.* (1982 ed. and Supp. V). We hold that they do not.

I

Respondents, migrant farmworkers employed by petitioner Adams Fruit Company, Inc., suffered severe injuries in an automobile accident while they traveled to work in Adams Fruit's van. As a result of their injuries, respondents received benefits pursuant to Florida workers' compensation law. They thereafter filed suit against Adams Fruit in Federal District Court, alleging that their injuries were attributable in part to Adams Fruit's intentional violations of AWPA's motor vehicle safety provisions, 29 U. S. C. § 1841(b)(1)(A) (1982 ed.), and accompanying regulations, 29

---

*Briefs of *amici curiae* urging reversal were filed for the American Farm Bureau Federation et al. by *James D. Holzhauer* and *John J. Rademacher;* and for the California Workers' Compensation Institute by *Michael A. Marks.*

Briefs of *amici curiae* urging affirmance were filed for the State of Texas et al. by *Jim Mattox,* Attorney General of Texas, *Mary F. Keller,* First Assistant Attorney General, and *Renea Hicks,* Special Assistant Attorney General, *John K. Van de Kamp,* Attorney General of California, and *James M. Shannon,* Attorney General of Massachusetts; and for Congressman William D. Ford et al. by *Melvin C. Garbow* and *Melvin Spaeth.*

*James N. Westwood* filed a brief for John I. Haas, Inc., as *amicus curiae.*

CFR § 500.105 (1989). Respondents maintained that the van in which they were transported was inadequate to support the vehicle's weight; that the total number of persons in the van exceeded its seating capacity; that a seat was not provided for each passenger; that the van was overloaded; that the seats in the van were not equipped with seat belts; and that Adams Fruit committed these violations intentionally. Respondents sought actual and statutory damages pursuant to AWPA's private right of action provision, 29 U. S. C. § 1854 (1982 ed.).[1]

Adams Fruit moved for summary judgment on the ground that Florida law provides that its workers' compensation remedy "shall be exclusive and in place of all other liability of such employer to . . . the employee," Fla. Stat. § 440.11 (1989), and that respondents' receipt of workers' compensation benefits therefore precluded them from recovering damages under AWPA for the same injuries. In support of its position, Adams Fruit maintained that Congress did not, in creating a private right of action for migrant workers, intend to pre-empt or interfere with the operation of state workers' compensation schemes, including their exclusivity provisions. The District Court granted petitioner's motion, relying on the Fourth Circuit's decision in *Roman* v. *Sunny Slope*

---

[1] Section 1854(a) provides:

"Any person aggrieved by a violation of this chapter or any regulation under this chapter by a farm labor contractor, agricultural employer, agricultural association, or other person may file suit in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy and without regard to the citizenship of the parties and without regard to exhaustion of any alternative administrative remedies provided herein."

Section 1854(c)(1) provides:

"If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief . . . ."

*Farms, Inc.*, 817 F. 2d 1116, 1118 (1987). The Court of Appeals for the Eleventh Circuit reversed, holding that an exclusivity provision in a state workers' compensation law does not bar a private suit under AWPA. 867 F. 2d 1305, 1311 (1989). We granted certiorari to resolve this split in authority, 493 U. S. 808 (1989), and now affirm.

## II

Section 504 of AWPA establishes a private right of action for aggrieved migrant workers against agricultural employers and provides for actual and statutory damages in cases of intentional violations. Resolution of petitioner's claim that AWPA's private right of action is withdrawn where state law establishes workers' compensation as an exclusive remedy depends on two doctrinally related issues. First we must decide whether, as a matter of statutory construction, AWPA permits migrant workers to pursue federal remedies under such circumstances. Second, if AWPA permits simultaneous recovery under federal and state law, we must determine whether, under pre-emption principles, AWPA precludes giving effect to state exclusivity provisions that purport to withdraw federal remedies. In either case, the issue turns on the language of the statute and, where the language is not dispositive, on the intent of Congress as revealed in the history and purposes of the statutory scheme. See, *e. g., Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself"); *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85, 95 (1983) ("[I]n deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue"). As a general rule of statutory construction, where the terms of a statute are unambiguous, judicial inquiry is complete. See, *e. g., Rubin* v. *United States*, 449 U. S. 424, 430 (1981). Pre-emption "is compelled whether Congress' command is explicitly stated in the stat-

ute's language or implicitly contained in its structure and purpose." *Jones* v. *Rath Packing Co.*, 430 U. S. 519, 525 (1977).

## A

The enforcement provisions of AWPA that establish a private right of action for "[a]ny person aggrieved by a violation" of the Act's provisions or accompanying regulations, 29 U. S. C. § 1854(a) (1982 ed.), in no way intimate that the availability of that right is affected by state workers' compensation law. Adams Fruit nevertheless contends that the language of AWPA's enforcement provisions is not dispositive because other provisions of the statute reflect congressional intent to withdraw private rights of action where state workers' compensation is available.

Adams Fruit's argument focuses on § 1841, which concerns motor vehicle safety. Subsections (a) and (b) of § 1841 establish minimum standards, licensing, and insurance requirements to help secure safe transportation for migrant and seasonal agricultural workers. As part of these protections, subsection (b)(1)(C) requires each agricultural employer to "have an insurance policy or a liability bond . . . which insures the agricultural employer . . . against liability for damage to persons or property arising from the ownership, operation, or the causing to be operated, of any vehicle used to transport any migrant or seasonal agricultural worker." Subsection (c) waives this insurance requirement where an agricultural employer "is the employer of any migrant or seasonal agricultural worker for purposes of a State workers' compensation law." In such cases, "[n]o insurance policy or liability bond [is] required of the employer" if the migrant workers are transported solely under circumstances for which there is coverage under such state law.

Adams Fruit maintains that Congress' decision to permit agricultural employers to satisfy AWPA's insurance policy and liability bond requirements through their state workers' compensation insurance reflects an intent to preclude AWPA

liability for bodily injury where employers have obtained coverage under state law. In Adams Fruit's view, it would be incongruous for Congress explicitly to waive insurance coverage requirements where workers' compensation is available and at the same time to allow migrant workers to seek cumulative remedies under workers' compensation laws and AWPA. So construed, Adams Fruit argues, the statute creates a trap for the unwary agricultural employer, who reasonably could have expected the waiver of insurance requirements to reflect a waiver of liability as well.

Adams Fruit's argument is unpersuasive because it rests on the extraordinary and unjustified proposition that congressional intent regarding private enforcement of AWPA is best discerned through a meaning alleged to be implicit in AWPA's motor vehicle safety provisions rather than the explicit language of AWPA's enforcement provisions. AWPA's motor vehicle safety provisions appear in Title IV of the Act, entitled "Further Protections for Migrant and Seasonal Agricultural Workers," whereas AWPA's provision for a private right of action appears in Title V, part A, labeled "Enforcement Provisions." Moreover, Congress' sole express limitation on the availability of relief is found in AWPA's enforcement provisions. See § 1854(c)(2) (authorizing a court, "[i]n determining the amount of damages to be awarded . . . , to consider whether an attempt was made to resolve the issues in dispute before the resort to litigation"). Had Congress intended to limit further the availability of AWPA relief based on the adequacy of state workers' compensation remedies, it would have made that purpose clear in the enforcement provisions of AWPA.[2] Petitioner's argu-

---

[2] In other statutes, Congress has expressed clearly its intent to limit the availability of a federal remedy where a claimant has received workers' compensation benefits related to the same injury. See, e. g., 56 Stat. 1032, 42 U. S. C. § 1705(a) (1982 ed.) (providing that "[n]o benefits shall be paid or furnished under [the War Hazards Compensation Act] for injury or death to any person who recovers or receives workmen's compensation benefits for the same injury or death under . . . the law of any State").

ment, which relies on provisions far removed from Congress' express authorization of a federal remedy, is inconsistent with basic principles of statutory construction that require giving effect to the meaning and placement of the words chosen by Congress. See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 813 (1989).

Adams Fruit's argument is also flawed in that the insurance waiver provision is not inconsistent with the availability of overlapping remedies under workers' compensation laws and AWPA. It is true that, in accordance with § 1841(c)(1)'s waiver of insurance requirements, an agricultural employer will not be in violation of AWPA if it fails to obtain insurance sufficient to cover its potential liability as long as the employer maintains insurance under state workers' compensation law. But the possibility of underinsurance is also present where an employer is *not* enrolled in a workers' compensation plan. AWPA limits the insurance that agricultural employers must carry, 29 U. S. C. § 1841(b)(3) (1982 ed.); if a claim exceeds the required coverage, an employer is nonetheless liable for the whole claim. § 1854(c)(1) (authorizing damages "up to and including an amount equal to the amount of actual damages"); see also 128 Cong. Rec. 32463 (1982) ("[F]ull actual damages [are to] be awarded in every case"). In this respect, AWPA does not differ from other mandatory insurance regimes that require a minimum level of coverage without establishing an absolute limit on liability. Thus, Congress' decisions to allow workers' compensation insurance to satisfy § 1841(b)'s minimum coverage requirements on the one hand, and to afford migrant workers federal and state remedies that may exceed such coverage on the other, are not incompatible; indeed, the decisions are consistent with AWPA's treatment of agricultural employers who are not exempted from § 1841(b)'s insurance and bond requirements.[3]

---

[3] For similar reasons, we reject Adams Fruit's claim that the refusal to exempt employers from AWPA liability where they have obtained workers' compensation coverage upsets employers' reasonable expectations re-

We likewise reject petitioner's contention that, where Congress authorizes a private right of action to vindicate a federal right, we should assume that Congress has conditioned that right on the unavailability of a state remedy. Indeed, we have stated that "it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." *NLRB* v. *Natural Gas Utility District of Hawkins County*, 402 U. S. 600, 603 (1971) (internal quotation marks and citation omitted). Congress may *choose* to establish state remedies as adequate alternatives to federal relief, but federal rights should be regarded as supplementing state-created rights unless otherwise indicated. See, *e. g.*, *Gomez* v. *Toledo*, 446 U. S. 635, 639 (1980) (construing 42 U. S. C. § 1983); *Tennessee C., I. & R. Co.* v. *Muscoda Local No. 123*, 321 U. S. 590, 597 (1944) (construing Fair Labor Standards Act).

Cases in which this Court has harmonized *federal* statutes that provide overlapping *federal* remedies, see, *e. g.*, *United States* v. *Demko*, 385 U. S. 149 (1966), are not to the contrary. In *Demko*, this Court held that the existence of a comprehensive federal scheme for compensating injured prisoners precluded supplemental recovery under the Federal Tort Claims Act. A finding that a specific federal remedy trumps a more general federal remedy may be appropriate in certain circumstances, but that conclusion is a far cry from a presumption that a general state remedy invariably trumps a specific federal one.

Accordingly, the plain meaning of the statute's language indicates that AWPA's private right of action is unaffected

---

garding liability. Because the insurance requirements of § 1841 establish a floor of coverage rather than a ceiling of liability, employers' expectations to the contrary are unreasonable. Moreover, to the extent that Adams Fruit's argument rests on equitable considerations, no inequity occurs where, as here, a predicate for liability is an intentional violation of the law. See 29 U. S. C. § 1854(c)(1) (1982 ed.).

by the availability of remedies under state workers' compensation law.

## B

Adams Fruit also contends that Congress did not intend to pre-empt States from establishing their workers' compensation schemes as the exclusive mechanism to redress injuries to migrant workers. In support of this position, Adams Fruit points to 29 U. S. C. § 1871 (1982 ed.), which provides that the statute "is intended to supplement State law, and compliance with this chapter shall not excuse any person from compliance with appropriate State law and regulation." On the basis of this provision, Adams Fruit argues that this Court must give effect to the exclusivity provision in Florida's statute, which it construes as withdrawing AWPA's private right of action.

We disagree that Florida's exclusivity provision is intended to preclude federal remedies. Neither the Florida Legislature nor the Florida courts have declared such a purpose; indeed, to the limited extent that the Florida Supreme Court has expressed a view regarding the extraterritorial scope of the exclusivity provision, it has stated the opposite. See *Byrd* v. *Richardson-Greenshields Securities, Inc.*, 552 So. 2d 1099, 1102 (1989) (refusing to frustrate federal and state sexual harassment policies through "blind adherence to the exclusivity rule of the workers' compensation statute alone" and expressing its commitment "not [to] apply the exclusivity rule in a manner that effectively abrogates the policies of other law"). We therefore decline petitioner's invitation to construe Florida law so as to create a conflict between federal and state legislation.[4]

---

[4] The States of California and Texas and the Commonwealth of Massachusetts—appearing as *amici curiae* for respondents—have urged this Court to affirm the decision below. Each "has a provision in its state workers' compensation statute making workers' recovery for personal injuries under the state workers' insurance system the exclusive mechanism for personal injury compensation," and each declares an interest in "pre-

Even if Florida's provision were directed at federal law, § 1871 does not mandate displacement of the federal remedy. Although that section permits States to supplement AWPA's remedial scheme, it cannot be viewed as authorizing States to replace or supersede its remedies. Nor are we persuaded by petitioner's claim that Congress intended to preserve the particular balance state workers' compensation statutes generally strike between assurance of compensation on the one hand and limited and exclusive liability for the employer on the other. Whatever the merits of this characterization of the purposes of workers' compensation, the point is off target. That congressional authorization of a federal remedy may affect the balance struck in state regulatory schemes does not suggest that Congress intended its remedial provisions to be effective only in certain States. Federal legislation applies in all States, and in cases of conflict between federal law and the policies purportedly underlying some state regulatory schemes, the scope of federal law is not curtailed.

More generally, we refuse to adopt Adams Fruit's "reverse" pre-emption principle that would authorize States to withdraw federal remedies by establishing state remedies as exclusive. Such provisions cannot be viewed as permissible interstitial regulation in the service of, or at least neutral with respect to, the purposes of the federal scheme. Cf. *Mackey* v. *Lanier Collections Agency & Service, Inc.*, 486 U. S. 825, 834–838 (1988) (where federal law does not establish an enforcement mechanism for collecting ERISA judgments, state mechanisms not pre-empted); *Robertson* v. *Wegmann*, 436 U. S. 584, 594 (1978) (application of state survivorship rule to 42 U. S. C. § 1983 is not pre-empted because rule does not impair federally secured right). Rather, they directly conflict with the purposes of the federal statute.

---

vent[ing] its principal statutory mechanism for the recompense of injured migrant workers from being transmuted into a contraption destroying federal protection for those same workers." Brief for Texas et al. as *Amici Curiae* 1–2.

Accordingly, we find that AWPA pre-empts state law to the limited extent that it does not permit States to supplant, rather than to supplement, AWPA's remedial scheme.

## C

Adams Fruit argues that, in the absence of any explicit congressional statement regarding the pre-emptive scope of AWPA, this Court should defer to the Department of Labor's position that "[w]here a State workers' compensation law is applicable and coverage is provided for a migrant or seasonal agricultural worker by the employer, the workers' compensation benefits are the exclusive remedy for loss under this Act in the case of bodily injury or death." 29 CFR § 500.122(b) (1989).

As an initial matter, we reject petitioner's view that AWPA's failure to speak directly to the pre-emption of state exclusivity provisions creates a statutory "gap" within the meaning of *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843 (1984), that Congress intended the Department of Labor to fill. A "gap" is not created in a statutory scheme merely because a statute does not restate the truism that States may not pre-empt federal law.

Moreover, even if AWPA's language establishing a private right of action is ambiguous, we need not defer to the Secretary of Labor's view of the scope of § 1854 because Congress has expressly established the Judiciary and not the Department of Labor as the adjudicator of private rights of action arising under the statute. A precondition to deference under *Chevron* is a congressional delegation of administrative authority. *Bowen v. Georgetown University Hospital*, 488 U. S. 204, 208 (1988). See also *NLRB v. Food and Commercial Workers*, 484 U. S. 112, 123 (1987) (*Chevron* review of agency interpretations of statutes applies only to regulations "promulgated pursuant to congressional authority"); *Crandon v. United States*, 494 U. S. 152, 177 (1990) (SCALIA, J., concurring in judgment) (rejecting *Chevron* deference

where the statute "is not administered by any agency but by the courts"); cf. *Bureau of Alcohol, Tobacco and Firearms* v. *FLRA*, 464 U. S. 89, 97 (1983) (refusing to sanction "'unauthorized assumption by an agency of major policy decisions'" (quoting *American Ship Building Co.* v. *NLRB*, 380 U. S. 300, 318 (1965)). No such delegation regarding AWPA's enforcement provisions is evident in the statute. Rather, Congress established an enforcement scheme independent of the Executive and provided aggrieved farmworkers with direct recourse to federal court where their rights under the statute are violated. Under such circumstances, it would be inappropriate to consult executive interpretations of § 1854 to resolve ambiguities surrounding the scope of AWPA's judicially enforceable remedy.

Congress clearly envisioned, indeed expressly mandated, a role for the Department of Labor in administering the statute by requiring the Secretary to promulgate *standards* implementing AWPA's motor vehicle provisions. § 1841(d). This delegation, however, does not empower the Secretary to regulate the scope of the judicial power vested by the statute. Although agency determinations within the scope of delegated authority are entitled to deference, it is fundamental "that an agency may not bootstrap itself into an area in which it has no jurisdiction." *Federal Maritime Comm'n* v. *Seatrain Lines, Inc.*, 411 U. S. 726, 745 (1973); *SEC* v. *Sloan*, 436 U. S. 103, 119 (1978) (same); cf. *Adamo Wrecking Co.* v. *United States*, 434 U. S. 275, 288, n. 5 (1978) (rejecting "Administrator's unexplained exercise of supposed authority"). Accordingly, the Secretary's conclusion that workers' compensation benefits, where available, provide the exclusive remedy for violations of AWPA is not entitled to *Chevron* deference.

## III

Our review of the language and structure of AWPA leads us to conclude that AWPA does not establish workers' compensation benefits as an exclusive remedy under § 1854, even

where state workers' compensation schemes purport to establish their benefits as exclusive of all other relief.[5]   Accordingly, the decision of the Court of Appeals is affirmed.

*It is so ordered.*

---

[5] We agree with the court below that an award of actual damages under AWPA may be offset in light of a farmworker's receipt of benefits under state workers' compensation law.