**Humberto & Maria Guadalupe HERNANDEZ, et al., Plaintiffs,**

v.

**Richard RUIZ, et al., Defendants.**

**Civ. A. No. B–83–270.**

United States District Court,
S.D. Texas,
Brownsville Division.

Feb. 11, 1993.

William H. Beardall, Jr., Texas Rural Legal Aid, Inc., Weslaco, TX, and Kay E. Mares, Texas Rural Legal Aid, Inc., Plainview, TX, for plaintiffs.

Alejandro Moreno, Jr., Edinburg, TX, Raul Mora, McAllen, TX, Juan Pena, Pharr, TX, for defendants.

## SUPPLEMENTAL FINDINGS AND CONCLUSIONS

KAZEN, District Judge.

The issue before the Court is whether the non-working children of migrant farmworkers who worked for Defendant Ruiz have standing to sue Defendant for housing violations under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA" or "Act").

### Background

On May 4, 1992, this Court issued Findings of Fact and Conclusions of Law in this case after conducting a bench trial. The Court found, *inter alia*, that Defendant Ruiz violated Section 1823(a) of the AWPA by not providing adequate housing for migrant workers and their families.[1] Defendant was assessed $100.00 "per person" for this violation. The Court did not determine whether the "per person" penalty applied to farmworkers' children who lived in the housing units with their parents but did not work for Defendant. On November 24, 1992, the parties asked the Court to resolve this issue by making Supplemental Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

Plaintiffs contend that the $100.00 per person penalty should apply to non-working children of the farmworkers who lived with their parents in the substandard housing facilities because these children have standing to sue for the housing violations under the AWPA. Defendant disagrees, and argues that the AWPA does not confer standing to non-working children of farmworkers.[2]

### Discussion

■ The Court's analysis of the AWPA necessarily begins with the language of the statute. *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 110 S.Ct. 1384, 1387, 108 L.Ed.2d 585 (1990). Where the language is not dispositive, the analysis must focus on the intent of Congress as revealed in the history and purposes of the statutory scheme. *Id.* Because the AWPA is a remedial statute and its standing provision is patterned after Civil Rights statutes,[3] the Act must be construed broadly to effect its humanitarian purpose. *See Bracamontes v. Weyerhaeuser Co.*, 840 F.2d 271, 276 (5th Cir.1988). At a minimum, the Court's interpretation of the AWPA's standing provision must comport with constitutional limitations on federal court jurisdiction. *See Warth v. Seldin*, 95 S.Ct. 2197, 2206 (1975).

#### a. Statutory Language

Section 1854 of the Act establishes a private right of action for "any person" aggrieved by a violation of the statute. 29 U.S.C. § 1854(a). When defining terms used in the Act, Congress did not limit "person" to a farmworker; instead, the statute defines "person" to mean "any individual, partnership, association, joint stock company, trust cooperative, or corporation." 29 U.S.C. § 1802(9). Because children are "individuals," a straightforward reading of the Act permits aggrieved, non-working children to sue for violations of the Act.

The language used in other sections of the Act supports this interpretation of the

---

**1.** The Court found that Defendant violated the AWPA by failing to provide housing with beds in violation of federal standards described in 29 C.F.R. § 1910.142(b).

**2.** While Defendant has not responded to Plaintiffs' brief of November 24, 1992, he mentioned this issue in a trial brief of August 27, 1991. The Court has looked to that brief for a statement of Defendant's position.

**3.** *See Farm Labor Contractor Registration Act Amendments of 1973: Hearings on H.R. 7597*

*Before the Subcomm. on Agricultural Labor of the House Comm. on Education and Labor,* 93d. Cong., 1st Sess. 112 (1973) (statement of Representative Ford) (cited in *Alvarez v. Longboy,* 697 F.2d 1333, 1336 [9th Cir.1983] ). AWPA's section authorizing aggrieved persons to file suit in federal court is virtually identical to the civil suit provision in the AWPA's predecessor, the Farm Labor Contractor Registration Act. *See* 29 U.S.C. § 1854(a) (AWPA) and 7 U.S.C. § 2050a (repealed) (FLCRA).

scope of § 1854. When Congress wanted to restrict the applicability of a provision to farmworkers, it structured the statute accordingly. For example, § 1855, which prohibits employers from discriminating or retaliating against workers who have taken action to enforce the Act, clearly applies only to workers:

"No person shall intimidate, threaten ... or in any manner discriminate against any *migrant or seasonal agricultural worker* because such worker has ... [exercised] any right or protection afforded by this chapter. 29 U.S.C. § 1855(a) (emphasis added).

If, as Defendant argues, Congress had intended the AWPA's private right of action to apply only to workers, Congress could have similarly narrowed the language of § 1854.

### b. Legislative History

The legislative histories of the AWPA and its predecessor, the Farm Labor Contractor Reporting Act ("FLCRA"), also support a finding that the non-working children of farmworkers have standing to sue for AWPA housing violations. The FLCRA was the first federal statute to regulate the practices of those who hired migrant farmworkers. *See Bracamontes*, 840 F.2d at 272. Congress replaced the FLCRA with the AWPA in 1982, primarily to ease onerous registration requirements on agricultural employers. *Caro–Galvan v. Curtis Richardson*, No. 91–3543, 1993 U.S.App. LEXIS 610, at *12 (11th Cir. Jan. 20, 1993). However, Congress was careful to note that the AWPA would continue and, in some cases, expand the farmworker protections developed under the FLCRA. *Id.* In fact, many of the FLCRA's provisions relating to farmworker protections were simply grafted onto the AWPA. *See, e.g.*, 7 U.S.C. § 2042(d) (repealed) (FLCRA definition of "agricultural employment") and 29 U.S.C. § 1802(3) (AWPA definition of "agricultural employment"), *cited in Bracamontes*, 840 F.2d at 272–73.

The portion of the AWPA which establishes a private right of action for persons aggrieved by AWPA violations was one of the FLCRA provisions that was transferred to the AWPA without much alteration. *See* 7 U.S.C. § 2050a (repealed) (FLRCA's civil suit provision) and 29 U.S.C. § 1854 (AWPA's civil suit provision). Congress first created the private right of action through the 1974 Amendments to the FLCRA. *See* S.Rep. No. 93–1295, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6441, 6446, 6450 (hereinafter "1974 Amendments Leg.Hist."). At that time, Congress determined that the FLCRA was not achieving its intended goals, due in large part to the Government's inability to "deter and correct" the "widespread violations" of the statute. *Id.* at 6443. Congress concluded that it could remedy the defects in the FLCRA by authorizing persons "aggrieved" by violations of the statute to bring private enforcement actions in federal court. *Id.* at 6445.

Although Congress did not specifically define in the FLCRA which aggrieved persons could bring a civil suit against contractors, the legislative history indicates that the plight of the children of farmworkers who were forced to live in sub-standard housing was clearly part of the problem the legislators sought to address through the 1974 amendments. In its description of the background and need for the legislation, the Senate Report explains:

"The families, and *particularly the children*, of these [migrant farm] workers have also suffered from the typical symptoms of chronic poverty—being undereducated, ill-fed, poorly housed, and lacking even the most rudimentary health and sanitary facilities." *Id.* at 6441 (emphasis added).

Interpreting the legislative history of the statute broadly to effectuate its remedial purpose, the Court concludes that children who lived in sub-standard housing provided by their parents' employers would have had standing to sue those employers for FLCRA housing violations. Because the protective reach of the AWPA was meant to extend to all those who were within the purview of the FLCRA, *Caro–Galvan*, 1993 U.S.App. LEXIS at *12, the Court

concludes that such children now have standing to sue under the AWPA.

The legislative history of the AWPA itself also indicates that Congress adopted housing standards with an eye toward protecting the children of migrant agricultural workers. Congress emphasized that the AWPA provisions describing the health and safety standards for housing should be:

> "interpreted with the broadest possible meaning to ensure that the person who owns or controls the facility used as housing for migrant agricultural workers *and their families* is responsible for maintaining the facility in compliance with ... safety and health standards." H.Rep. No. 97–885, 97th Cong., 2d Sess. 17–18, *reprinted in* 1982 U.S.C.C.A.N. 4547, 4563–64 (emphasis added) (hereinafter "AWPA Leg.Hist.").

Congress further warned that the AWPA should not be interpreted to exempt violations of standards which "endanger the health or safety of the migrant agricultural worker *or his or her family.*" *Id.* at 4564 (emphasis added). Because Congress considered the non-working family members of farmworkers to be a group directly affected by sub-standard housing, it is consistent with the AWPA's goals to permit the children of migrant farmworkers to bring suit against the owners or operators of the housing facilities for AWPA violations.

### c. Standing: Constitutional Considerations

■ By creating a private right of action for persons "aggrieved" by the violation of a statute, Congress can expand standing to those who otherwise would be barred under prudential standing rules. *See, e.g., Warth v. Seldin*, 95 S.Ct. at 2206. However, the standing requirements of Article III remain: a plaintiff must allege a distinct and palpable injury to himself as a result of a defendant's actions, the injury must be fairly traceable to the actions of the defendant, and the injury must be likely to be redressed by a favorable decision. *See Save Our Community v. U.S. Environmental Protection Agency*, 971 F.2d 1155, 1160 (5th Cir.1992) (citation omitted).

The non-working children of migrant farmworkers in the instant case clearly meet the Article III standing requirements. They were injured when placed in sub-standard housing units provided by the Defendant. Specifically, the Court has previously found that the workers and their children were asked to live in houses or apartments which contained virtually no furniture, including no beds. These injuries are "traceable" to the Defendant because he supplied the inadequate housing. Finally, the injuries the children suffered can be redressed by penalizing Defendant for the housing violations.

Defendant argues that giving children of farmworkers standing to sue for AWPA housing violations will open the floodgates to AWPA suits brought by "ordinary cousins or relations" who visit the migrant farmworkers for short periods of time. The Court declines to comment on this argument because it is not raised by the facts of this case.

The Court concludes that the non-working children of migrant workers who were housed with their parents in sub-standard homes or apartments have standing to sue Defendant for the violations of the AWPA's housing standard regulations. Accordingly, under the terms of the Court's May 4, 1992 decision, Plaintiffs who did not work for Defendant Ruiz, but lived with their parents in housing which violated the AWPA, are entitled to recover damages of $100.00 per person for Defendant Ruiz's violation of 29 U.S.C. § 1823(a).