**NATIONAL METAL AND STEEL CORPORATION, Plaintiff–Appellant,**

v.

**Robert B. REICH, Secretary of Labor, Defendant–Appellee.**

No. 94–1844.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 31, 1995.

Decided June 5, 1995.

**ARGUED:** Nancy Ellen Paige, Lawrence S. Greenwald, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for appellant. Joshua Thomas Gillelan, II, Sr. Atty., Office of the Solicitor, U.S. Dept. of Labor, Washington, DC, for appellee. **ON BRIEF:** Thomas S. Williamson, Jr., Sol. of Labor, Carol A. De Deo, Associate Sol., Office of the Solicitor, U.S. Dept. of Labor, Washington, DC, for appellee.

Before ERVIN, Chief Judge, and MURNAGHAN and MOTZ, Circuit Judges.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge MURNAGHAN and Judge MOTZ joined.

## OPINION

ERVIN, Chief Judge:

This dispute concerns whether National Metal and Steel Corporation ("National Metal") must contribute to a special fund established by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), ch. 509, 44 Stat. 1424 (1927) (codified as amended at 33 U.S.C. § 901), to compensate injured workers, even though the company has ceased operating as a maritime employer and its authorization to self-insure has been terminated. Because the Secretary of Labor's interpretation of the LHWCA is entitled to deference, and his position that National Metal is obligated to fulfill the responsibility it incurred while a maritime employer is eminently reasonable, we affirm the district court's grant of summary judgment in favor of the Secretary and hold that National Metal remains obligated to pay annual assessments into the fund.

### I.

National Metal operated a ship dismantling and scrap metal export stevedoring business in Los Angeles, California, until January 1, 1986. At that time, the company lost its harbor facility, ceased its ship dismantling and stevedoring activities, and discharged its maritime workers. National Metal had been authorized pursuant to the LHWCA to self-insure its compensatory obligations to injured employees since 1956. After terminating its maritime workers, the company notified the Department of Labor ("DOL") that it no longer required authorization to self-insure. The DOL responded by terminating National Metal's authorization to self-insure effective March 17, 1986.

Despite the termination of National Metal's authority to self-insure, the DOL continued assessing the company for contributions to the special fund established in § 8(f) of the LHWCA. *See* 33 U.S.C. § 908(f) (establishing a fund to compensate employees with preexisting disabilities who sustain second injuries). National Metal paid those fees through August 29, 1989, with its last payment made "under protest." Altogether, the company has paid assessments totalling $142,282 since March 1986, the time when its authority to self-insure ended. Since 1989, the DOL has continued compensating eligible beneficiaries from the special fund on National Metal's behalf, although the company has made no equivalent contribution into the fund.

On August 24, 1990, National Metal filed suit against the Secretary of Labor in the United States District Court for the District of Maryland seeking a declaration that the company no longer had to contribute to the special fund. In addition, the company sought a refund of the payments it had made after its authority to self-insure ended. The Secretary filed a counter-claim seeking National Metal's unpaid assessments from August 1989 to the present and a declaration that the company would be "fully liable for compensation to its former employees [for covered injuries] even to the extent their compensation would otherwise be payable from the ... 'special fund' " if it failed to pay the amount assessed by the DOL.

After the parties filed cross-motions for summary judgment, the district court granted summary judgment in favor of the Secretary. *National Metal & Steel Corp. v. Reich,* 858 F.Supp. 62, 67 (D.Md.1994). In its memorandum opinion, the court concluded

> that an employer's obligation to compensate maritime employees for job-related injuries continues after it has terminated its business whether that compensation flows directly from the carrier or self-insurer, or from the Special Fund. Thus, the assessment formula used to finance the Special Fund applies to current and former carriers and self-insurers.

*Id.* Having lost at the district court level, National Metal filed timely notice of appeal to this court.

### II.

 This court reviews *de novo* the district court's grant of summary judgment. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.),

*cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). Because the disputed legal question regarding the LHWCA does not involve an area where Congress has declined to delegate administrative authority to an agency, *see Adams Fruit Co. v. Barrett,* 494 U.S. 638, 649, 110 S.Ct. 1384, 1390, 108 L.Ed.2d 585 (1990), and because the Secretary's stance is not merely a "litigating position," *see Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 212–13, 109 S.Ct. 468, 473–74, 102 L.Ed.2d 493 (1988), the DOL's interpretation of the ambiguous sections of the LHWCA is entitled to deference under *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).* Under *Chevron,* "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782.

■ Under the LHWCA, a maritime employer is required to secure payment of compensation to employees injured during the course of employment by insuring such payment with a company authorized to insure workers' compensation (a "carrier"), 33 U.S.C. § 932(a)(1), or by receiving authorization from the Secretary of Labor to pay such compensation directly as a "self-insurer," *id.* § 932(a)(2). Compensation for a subset of workers' injuries called "second injuries" is provided through a special fund, established to encourage companies to hire employees with disabilities by spreading the risk of loss throughout the industry. Section 8(f) of the Act requires that compensation for such injuries be provided by the employer for no more than 104 months, after which time the beneficiary is compensated from the special fund until she or he is no longer eligible. *See* 33 U.S.C. § 908(f). To endow the special fund, the Secretary assesses each carrier or self-insurer an amount determined by a formula set forth in § 44(c)(2). 33 U.S.C. § 944(c)(2). A self-insurer's contribution is based on the amount of compensation it paid and the amount disbursed from the special fund on its behalf during the previous year. *See id.*

National Metal argues that it is not obligated to contribute to the fund, because the company is no longer a maritime employer under the LHWCA. Primarily, National Metal relies on the statute's literal language. Section 44(c)(2) of the Act explicitly imposes assessments on "each carrier and self-insurer." *See* 33 U.S.C. § 944(c)(2). According to National Metal, the company presently is not subject to this provision because it technically is not a self-insurer. Nor is the company now a "carrier," defined by the terms of the Act to include all self-insurers. *See* 33 U.S.C. § 902(5). As additional support for this position, National Metal cites § 32(b) of the Act, which states that the suspension or revocation of a carrier's authority to secure payment of compensation "shall not affect the liability of any carrier already incurred." 33 U.S.C. § 932(b). National Metal reads the language mandating continued compensation as suggesting that Congress knew how to create an enduring obligation when it so desired. Therefore, the argument goes, by not including comparable language regarding an employer's obligation to contribute to the special fund, Congress must have declined to continue assessment liability beyond the termination of an employer's authorization to self-insure.

In contrast, the Secretary asserts that termination of the authorization to self-insure ends only the employer's privilege of currently operating as a self-insurer, but has no effect on liabilities arising out of previous maritime employment. He too cites § 32(b), but he interprets that provision as supporting the continuation of a former employer's already existing responsibilities—including that of contributing to the special fund. In effect, the DOL's position is that a maritime employer's obligation to make a proportionate contribution to the special fund is *incurred* at the time one of its eligible employees suffers a work-related injury. That this

---

* While there are no regulations or written agency constructions regarding the assessment provision, the Secretary's consistent practice is entitled to some degree of deference. *See Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 157, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991) ("Although not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers, these informal interpretations are still entitled to some weight on judicial review.").

duty may not *accrue* until sometime later—possibly after the employer's authorization to self-insure has been terminated—is not significant.

Particularly in light of the special fund's structure, the Secretary's interpretation of assessment liability under the LHWCA is more than reasonable. The formula adopted in § 44(c)(2) indicates a basic purpose to spread the cost of funding § 8(f) payments among employers who otherwise would be responsible for compensating their injured employees. Of significance here, the formula makes an employer's assessment burden in a given year dependent on the benefit received the previous year from not having had to compensate injured employees. If we were to accept National Metal's position, the company would reap a benefit for which it bore no commensurate burden, simply because the formula incorporates a time lag between an employee's injury and the employer's obligation to provide compensation for that injury. Of course, such need not be the case. One can, for example, imagine an insurance system in which each employer deposits up front the present value of the expected compensation per employee hired. Congress did not choose to implement such a system, however, and National Metal should not be allowed to profit at the rest of the industry's expense. In fact, doing so likely would encourage employers to discharge maritime employees in order to be relieved of their compensation burden.

Finally, the DOL's position is supported by the fact that National Metal considers itself an employer under those sections of the LHWCA that are beneficial to it. Most important, the company still enjoys the tort immunity the Act affords covered employers. *See* 33 U.S.C. § 905(a). Merely because National Metal has ceased operating as a maritime employer, workers injured earlier cannot now file tort suits against the company. Instead, they must seek compensation within the system established by the Act. Conversely, National Metal cannot abandon its continuing obligation to contribute to the special fund on behalf of its former eligible employees who suffered work-related injuries simply because it no longer operates as a maritime employer.

## III.

In sum, the Secretary's interpretation of the LHWCA, under which National Metal is required to pay annual assessments into the special fund according to the statutory formula, is both reasonable and equitable. The district court's summary judgment in favor of the Secretary of Labor is therefore

*AFFIRMED.*