**NATIONAL BROADCASTING COMPANY, INC., Plaintiff–Appellee,**

v.

**SATELLITE BROADCAST NETWORKS, INC., Defendant–Appellant.**

**NBC TELEVISION AFFILIATES, Plaintiff–Appellee,**

v.

**SATELLITE BROADCAST NETWORKS, INC., Defendant–Appellant.**

No. 90–8597.

United States Court of Appeals, Eleventh Circuit.

Sept. 4, 1991.

David H. Flint, Alexander J. Simmons, Jr., Schreeder, Wheeler & Flint, Atlanta, Ga., Gardner F. Gillespie, Jeremy H. Stern, Steven J. Horvitz, Hogan & Hartson, Washington, D.C., for Satellite Broadcast Networks, Inc.

James A. Demetry, Terrence B. Adamson, Dow, Lohnes & Albertson, Atlanta, GA., Jonathan D. Hart, David J. Wittenstein, Werner K. Hartenberger, Dow, Lohnes & Albertson, Washington, D.C., for NBC Television Affiliates.

Joseph R. Bankoff, R. Byron Attridge, King & Spalding, Atlanta, Ga., Jerome J. Shestack, Ronald E. Karam, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for National Broadcasting Co., Inc.

Before EDMONDSON and DUBINA, Circuit Judges, and ESCHBACH,* Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

Is Satellite Broadcast Networks, Inc. ("SBN") a "cable system" under 17 U.S.C. § 111? If it is, then it was free to rebroadcast the television signal of a National Broadcasting Company (NBC) affiliate. If not, then SBN is liable to NBC for copyright infringement. We conclude that SBN is a cable system and so reverse the District Court's summary judgment in NBC's favor.

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. NBC owns the copyright to a very few television programs, such as *NBC Nightly News* and

The facts are undisputed. SBN has facilities in Georgia, Illinois and New Jersey that receive the broadcast signals from local television stations. SBN then scrambles the signals and rebroadcasts them across the country by satellite. Any owner of a home satellite dish can receive the signal and, for a fee, receive an unscrambling box from SBN. One of the local signals that SBN has retransmitted is that of WXIA, the Atlanta affiliate of NBC.

NBC filed this action in 1987 claiming that SBN has infringed NBC's exclusive rights in copyrighted work [1] by rebroadcasting WXIA's signal without NBC's permission. NBC's suit is based on 17 U.S.C. § 501(b), which entitles "[t]he legal or beneficial owner of an exclusive right under a copyright ... to institute an action for any infringement of that particular right...." SBN responds that it committed no infringement. It argues that NBC and its affiliates had no choice but to grant SBN the right to rebroadcast their transmissions because of a "compulsory license" provided in 17 U.S.C. § 111, which states:

> [S]econdary transmissions to the public by a cable system of a primary transmission made by a broadcast station ... shall be subject to compulsory licensing upon compliance with [procedural requirements and payment of mandatory royalties] where the carriage of the signals comprising the secondary transmission is permissible under the rules, regulations or authorizations of the Federal Communications Commission.

17 U.S.C. § 111(c)(1). NBC must grant SBN the license as long as SBN meets the requirements of § 111. If SBN qualifies for the license, it is not an infringer because it has violated no exclusive rights.

No one disputes that SBN's satellite broadcast was a "secondary transmission"; that WXIA is a broadcast station; and that SBN complied with all the procedural and royalty requirements. The question is whether SBN is a "cable system." The District Court concluded on

*Today.* For the majority of its programs, NBC possesses the exclusive right to broadcast. Affidavit of John Damiano ¶¶ 8–9.

summary judgment that SBN cannot be a "cable system," and so has no rebroadcast rights under § 111, because its facilities are not located entirely within a single state. Our review of a district court's grant of summary judgment is plenary. *Kendrick v. Jefferson County Bd. of Educ.*, 932 F.2d 910, 912 (11th Cir.1991).

■■■ The District Court's view [2] was based on § 111(f), which defines "cable system" as:

a facility *located in* any State, Territory, Trust Territory, or Possession, that ... receives signals transmitted or programs broadcast by one or more television broadcast stations ... and makes secondary transmissions of such signals....

17 U.S.C. § 111(f) (emphasis added).[3] The District Court concluded that to be a "facility located in any State," the facility must be located entirely within a single state.[4] In drawing this construction, the Court was

---

2. Outside this litigation, no court has addressed the question whether a satellite rebroadcast facility like SBN can be a cable system under § 111. And it is highly likely that we will be one of the last courts to address the issue. Through the Satellite Home Viewer Act of 1988, Congress has provided a new compulsory license for satellite carriers like SBN. *See* 17 U.S.C.A. § 119 (West Supp.1991). Section 119(e) provides that § 111 is not to be construed as providing any authority for secondary transmissions by satellite carriers while § 119 remains effective. Section 119 became effective on January 1, 1989 and ceases to be effective on December 31, 1994. *See* Pub.L. 100–667 §§ 206–07, 102 Stat. 3960 (1988). The Congress was very careful to note that the Satellite Home Viewer Act is not to be interpreted as impacting SBN's alleged status as a cable system in the current lawsuit. *See* H.R. No. 100–887(I), 100th Cong., 2d Sess. 14, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5611, 5617 and 5630.

3. Section 111(f) goes on to require that the secondary transmission be made through "wires, cables, or other communications channels." A question arises whether a transmission via satellite is one through "other communications channels." We think so. The legislative history shows that in considering the Copyrights Act, Congress understood that the development of satellites promised a new channel for communicating in the future. *See* H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 47, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5660. Moreover, in interpreting another provision of § 111, both the Second and the Eighth Circuits have concluded that transmission by "wires, cables or other communications channels" includes satellite broadcasts. *See Hubbard Broadcasting v. Southern Satellite*, 777 F.2d 393, 401–02 (8th Cir.1985), *cert. den.*, 479 U.S. 1005, 107 S.Ct. 643, 93 L.Ed.2d 699 (1986); *Eastern Microwave, Inc. v. Doubleday Sports, Inc.*, 691 F.2d 125, 131 (2d Cir.1982), *cert. den.*, 459 U.S. 1226, 103 S.Ct. 1232, 75 L.Ed.2d 467 (1983).

4. Subsequent to oral argument in this case, the Copyright Office issued a policy decision that satellite carriers like SBN are not "cable systems" under § 111. Cable Compulsory License; Definition of Cable Systems, Fed.Reg. 31,580

(1991). Specifically, the Copyright Office has ruled that a facility must both receive and transmit signals from within the same state in order to qualify for compulsory licensure. *Id.* at 31,-590–91. The Copyright Office's policy decision is one of general applicability (*see id.* at 31,588) and fits within the Agency's rulemaking authority. *See* 5 U.S.C. § 551(4); *cf. Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of America, Inc.*, 836 F.2d 599, 607–10 (D.C.Cir.1988) (recognizing the authority of the Copyright Office to interpret § 111), *cert. den.*, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988). If this recent promulgation applied retroactively to this case, it might be entitled to deferential review under *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) and *Rust v. Sullivan*, ─── U.S. ───, ─── ───, 111 S.Ct. 1759, 1766–72, 114 L.Ed.2d 233 (1991). But the language of the Notice does not require that it apply retroactively. And even if it did, we are unconvinced that the Copyright Office would have the authority to issue a retroactive rule, because nothing in either the Administrative Procedure Act or the Copyrights Act explicitly so empowers the Agency. *See* 5 U.S.C. § 551(4) (" 'rule' means the whole or a part of an agency statement of general or particular applicability *and future effect* designed to implement, interpret, or prescribe law or policy....") (emphasis added); 17 U.S.C. §§ 701–10; *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.") (citations omitted); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990); *Wright v. Director of Fed. Emergency Mgmt. Agency*, 913 F.2d 1566, 1571–74 and n. 11 (11th Cir.1990); *Chaves County Home Health Serv., Inc., v. Sullivan*, 931 F.2d 914, 923 (D.C.Cir.1991); *General Motors Corp. v. National Hwy. Traffic Safety Admin.*, 898 F.2d 165, 169 (D.C.Cir.1990); *General Am. Transp.*

attempting to limit cable system status to traditional cable companies that serve only local communities. But nothing in the words Congress chose counsel that only local cable companies be included,[5] and if Congress had intended to benefit only community-based systems, it could have defined "cable system" more narrowly. *Cf.* 47 U.S.C. § 522(6) (defining "cable system" in the Cable Communications Policy Act to mean a facility that provides video programming to multiple subscribers "within a community"). We are thus unpersuaded that "located in any State" means located entirely within a single state. Indeed, if this narrow reading were to prevail, many of the concededly traditional local systems serving communities that cross a state border[6] would lose their cable system status.

Reading "located in any State" so narrowly also ignores the definition that immediately precedes that of "cable system"— the definition of "secondary transmission." A secondary transmission:

"is the further transmitting of a primary transmission simultaneously with the primary transmission, or nonsimultaneously with the primary transmission *if by a 'cable system' not located in whole or in part within the boundary of the forty-eight contiguous States, Hawaii, or Puerto Rico ...*"

§ 111(f) (emphasis added). The highlighted portion is a rather cumbersome way of describing a cable system located entirely within Alaska. But a nonsimultaneous broadcast is *not* a secondary transmission if made by a cable system located *partly in Alaska and partly in some other state.* If a cable system must be located entirely within a single state, it would have been sufficient for Congress to say "if by a 'cable system' located in Alaska." This suggests that Congress understood it would be possible for a cable system to exist "in part" within Alaska and "in part" elsewhere. This suggestion is consistent with our analysis, but conflicts with the District Court's view, that a cable system can never exist in part in one state and in part in another.

Finally there is no good reason why a satellite broadcasting company such as SBN should not be a cable system.[7] Without dispute, SBN could have broadcasted its signal to other cable systems located throughout the nation with each of these

---

Corp. v. Interstate Commerce Comm'n, 872 F.2d 1048, 1060–61 (D.C.Cir.1989), *on rehearing,* 883 F.2d 1029, 1030–31 and n. 2 (D.C.Cir.1989) (Silberman, J., concurring), *cert. den.,* — U.S. —, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *Chemical Waste Mgmt., Inc., v. United States Environmental Protection Agency,* 869 F.2d 1526, 1535–37 (D.C.Cir.1989); *cf. Myers v. Sullivan,* 916 F.2d 659, 675–78 (11th Cir.1990) (discussing retroactive application of judicial decisions in an agency proceeding); *Alacare Home Health Serv., Inc. v. Sullivan,* 891 F.2d 850, 854–55 (11th Cir. 1990) (retroactivity in an agency adjudicatory proceeding); *Kaiser,* 110 S.Ct. at 1585–88 (Scalia, J., concurring) (discussing the precedent and policy reasons supporting the presumption of nonretroactivity). In any event, we have considered the views of the Copyright Office on the language and legislative history of § 111, but we find those views unpersuasive. We of course express no opinion on the new rule's validity as applied prospectively.

5. The legislative history supports our conclusion that Congress intended to paint with a broad brush: "Cable television systems are commercial subscription services that pick up broadcasts of programming originated by others and retransmit them to paying subscribers." 1976

U.S.Code Cong. & Admin.News at 5702. SBN clearly fits this definition.

6. TCI of Maryland, Inc. serves subscribers in West Virginia, Pennsylvania and Maryland; Cox Cable Quint–Cities serves subscribers in Illinois and Iowa; and Comcast Cablevision of Paducah serves subscribers in Kentucky and Illinois. Affidavit of G. Todd Hardy ¶ 3.

7. NBC laments that because of SBN's broad geographic reach, SBN threatens the major television networks. For instance, an SBN subscriber in Arizona could view the WXIA broadcasts of *L.A. Law* or *Cheers* hours before the NBC affiliate in Arizona broadcasted these episodes. NBC may have a legitimate gripe, but protecting the network system is not a concern of § 111. "[T]he retransmission of network programming, including network programming in 'distant' markets, does not injure the copyright owner. The copyright owner contracts with the network on the basis of his programming reaching all markets served by the network and is compensated accordingly." 1976 U.S.Code Cong. & Adm.News at 5704; *see also Cablevision Sys. Dev.,* 836 F.2d at 603; *Hubbard,* 777 F.2d at 396. NBC's concerns are more about communications policy than about copyright infringement and are more appropriately directed to the FCC.

cable systems passing the signal along to the public. *See EMI,* 691 F.2d at 132–35 and n. 17 (EMI transmitted its signal to 600 cable systems.); *Hubbard Broadcasting,* 777 F.2d at 401–05. SBN has simply eliminated the middleman. *See EMI,* 691 F.2d at 131, 133. Moreover, to conclude that SBN cannot be a cable system because of its geographic reach would be to prevent those in sparsely populated areas from receiving the quality television reception technology can provide. Common practice in the traditional community-based cable television industry assumes it is uneconomical to wire homes in areas with less than 40 households per square mile. Affidavit of Mary (Kazie) Catherine Metzger ¶ 10. The majority of SBN's customers live in these sparsely populated areas not served by traditional cable television. *Id.* at ¶ 14. Indeed, many live outside the reach of the signals of one or all of the networks' programming. *Id.* at ¶ 15. If these people are to receive cable at all, it will have to be satellite-based cable. In short, there is no good reason to read "cable system" narrowly to deny SBN its license, and to do so will do an injustice to those who live in rural areas. SBN is a cable system.

 A minor issue that remains is that § 111(c)(1) gives SBN rebroadcast rights only if that rebroadcast was "permissible under the rules, regulations, or authorizations" of the FCC. The short answer is that the rebroadcast was permissible because no rule or regulation forbade it.

NBC has argued that before SBN's transmissions could become "permissible," the FCC had to affirmatively approve them. But to require express approval of the FCC would be to reach a result from the FCC's inaction that the FCC unequivocally does not intend. The FCC has expressed sympathy for NBC's concerns that direct-to-home satellite distribution threatens the network-affiliate relationship (*see supra* note 7), but the FCC has explicitly stated it would not address these concerns until after the courts have resolved the copyright infringement issue. *See* Inquiry into the Scrambling of Satellite Television Signals, First Report, 2 FCC Rcd. 1669

¶¶ 200–01 (1987). More to the point, the FCC has said "The question of whether the cable compulsory license applies to [home satellite dish] sales is unresolved. *We do not purport to resolve it.*" Inquiry into the Scrambling of Satellite Television Signals, Second Report, FCC 88–67, Docket No. 86–336 n. 27 (released March 11, 1988) (emphasis added). We will not read a result from the FCC's failure to act that the FCC neither intends nor foresees. The secondary transmissions were "permissible" under existing FCC rules, regulations and authorizations.

SBN is a cable system as defined under § 111 whose secondary transmissions were permissible under FCC rules and regulations. Therefore, SBN's rebroadcast of WXIA's signal infringed no copyright. The judgment of the District Court is REVERSED. The award of attorney's fees in favor of NBC is also REVERSED.