17 F.3d 344
 62 USLW 2606, 1994 Copr.L.Dec. P 27,232,
30 U.S.P.Q.2d 1225,
22 Media L. Rep. 1470
 SATELLITE BROADCASTING AND COMMUNICATIONS ASSOCIATION OF
AMERICA, et al., Plaintiffs-Appellees,
v.
Ralph OMAN, in his capacity as Register of Copyrights, and
Director of the Copyright Office of the Library of Congress,
and the Copyright Office of the Library of Congress and
United States of America, Defendants-Appellants.
 No. 93-8395.
 United States Court of Appeals,
Eleventh Circuit.
 March 24, 1994.
 
 Bruce G. Forrest, Civ. Div., U.S. Dept. of Justice, Washington, DC, Sharon Douglas Stokes, Asst. U.S. Atty., Atlanta, GA, for defendants-appellants.
 Mark S. Hopson, Carter G. Phillips, Christopher R. Drahozal, Sidley & Austin, Washington, DC, Gary G. Grindler, Daniel P. Griffin, Merrilee A. Gober, Atlanta, GA, for plaintiffs-appellees.
 Dennis Lane, Morrison & Hecker, Washington, DC, for amicus Motion Picture Assoc.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and CARNES, Circuit Judges, and HAND*, Senior District Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 This appeal calls upon the court to review the United States Copyright Office's ("Copyright Office") promulgation of regulations which deny satellite broadcasters the right to subscribe to the compulsory licensing scheme set forth at 17 U.S.C. Sec. 111. Based on this court's previous holding in NBC v. Satellite Broadcast Networks, 940 F.2d 1467 (11th Cir.1991) ("SBN" ), the district court invalidated the Copyright Office regulations. The Copyright Office appeals.
 
 
 2
 Although the new regulations conflict with our interpretation of the term "cable system" in SBN, they are neither arbitrary, capricious, nor in conflict with the clear meaning of the statute. They are therefore valid exercises of the Copyright Office's statutory authority to interpret the provisions of the compulsory licensing scheme, and are binding on this circuit. Accordingly, we REVERSE the district court's invalidation of the regulations.
 
 I.
 
 3
 Plaintiffs comprise the Satellite Broadcasting and Communications Association ("SBCA"), a trade group representing satellite carriers. Satellite carriers receive signals broadcast by television stations and then retransmit those signals by satellite to satellite dishes located in the homes of their subscribers.
 
 
 4
 This dispute centers on whether satellite carriers are "cable systems" for purposes of Copyright Act Sec. 111, which defines a "cable system" as:
 
 
 5
 a facility, located in any State, Territory, trust Territory, or Possession, that ... receives signals transmitted or programs broadcast by one or more television broadcast stations ... and makes secondary transmissions of such signals.
 
 
 6
 17 U.S.C. Sec. 111(f) (emphasis added). If satellite carriers are "cable systems," then they are entitled to subscribe to the compulsory licensing system set forth in that section.[1] This, in turn, would entitle satellite carriers to transmit copyrighted television broadcasts, so long as they pay royalties and abide by the procedures of the licensing scheme. By contrast, if satellite carriers are not "cable systems," then they are not permitted to subscribe to the licensing scheme and must find an alternate method of obtaining rights to their desired broadcasts.[2]
 
 
 7
 The Eleventh Circuit held in SBN that satellite carriers are "cable systems" covered by the compulsory licensing scheme. In SBN, NBC brought a copyright infringement action against SBN, a satellite carrier, alleging that SBN had rebroadcast NBC's signals without its permission. Interpreting the definition of "cable system" under Sec. 111(f), this court held that satellite carriers implicitly were included in the compulsory licensing scheme, and that SBN thus had engaged in no infringing behavior. We rejected the suggestion that to be a "facility located in any state" pursuant to Sec. 111(f), a "cable system" must be located entirely within a single state.[3] We further reasoned that there existed "no good reason" to prevent the often rural customers of satellite carriers from receiving the benefits afforded other cable viewers. See 940 F.2d at 1470.
 
 
 8
 Subsequent to oral argument in SBN, the Copyright Office issued a policy decision stating that satellite carriers are not "cable systems" under Sec. 111(f). The Office reasoned that Sec. 111(f) requires carriers to receive and transmit signals from within a single state, which is not the case with satellite technology. See Id. at 1469-70 n. 4 (citing Fed.Reg. 31,580 (1991)). We considered this policy decision in deciding SBN, but ultimately found it unpersuasive and, in any event, not retroactive. We emphasized, however, that we "of course express[ed] no opinion on the new rule's validity as applied prospectively." Id.
 
 
 9
 In 1992, after a notice and comment period, the Copyright Office affirmed its prior policy decision by promulgating a final rule which provided that carriers are not "cable systems" under Sec. 111(f). 57 Fed.Reg. 3283, 3296 (January 29, 1992) (codified at 37 C.F.R. Sec. 201.17(k)).[4] In its analysis, the Office roundly criticized our decision in SBN and offered several reasons directing an opposite conclusion. First, as the Copyright Office interpreted the statute, satellite carriers are not "located in any state, let alone the same state," a "critical requirement" under Sec. 111(f). 57 Fed.Reg. at 3290. Moreover, the Office concluded that Sec. 111(f) was "clearly directed at localized retransmission services," based on the section's provision that "two or more cable systems in contiguous communities ... operating from one headend " constitute one "cable system" for purposes of determining royalties. Id. at 3292. The Office reasoned that the terms "contiguous communities" and "headend"[5]--applicable to local transmissions--are anomalous in the context of geospherically orbiting satellite technology. Id. The Office further noted that Sec. 111(f)'s definition of a "distant signal equivalent"[6] by reference to television stations "within whose local service area the cable system is located" is similarly inapplicable to satellite carriers. Id. Finally, the Office concluded that the legislative history is devoid of any indication that Congress considered satellite carriers when enacting the compulsory licensing scheme. Id. at 3291.
 
 II.
 
 10
 The Copyright Office is a federal agency with authority to promulgate rules concerning the meaning and application of Sec. 111. See SBN, 940 F.2d at 1469 n. 4; Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of America, Inc., 836 F.2d 599, 608-09 (D.C.Cir.), cert. denied, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988); see also DeSylva v. Ballentine, 351 U.S. 570, 577-78, 76 S.Ct. 974, 978, 100 L.Ed. 1415 (1956) (recognizing that Copyright Office's interpretation of Copyright Act should ordinarily receive deference). As such, the Office's regulations must be upheld unless "they are arbitrary, capricious, or manifestly contrary" to the provisions of the Copyright Act. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Stated otherwise, if the Office has promulgated regulations which contradict the "clear meaning" or "plain language" of the statute, then those regulations must be struck down. See, e.g., Lechmere, Inc. v. NLRB, --- U.S. ----, ----, 112 S.Ct. 841, 847, 117 L.Ed.2d 79 (1992); Public Employees Retirement Sys. v. Betts, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989); Barrett v. Adams Fruit Co., Inc., 867 F.2d 1305 (11th Cir.1989), aff'd, 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990).
 
 
 11
 Courts generally must defer to an agency statutory interpretation that is at odds with circuit precedent, so long as "the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 844, 104 S.Ct. at 2782 (upholding Environment Protection Agency regulation which contradicted prior D.C.Circuit precedent).[7] Because the rule at issue in Chevron was not "arbitrary, capricious, or manifestly contrary to the statute," it was valid, notwithstanding circuit precedent to the contrary. Id.
 
 
 12
 SBCA argues that the instant action is controlled not by Chevron, but rather by Lechmere, Inc. v. NLRB, --- U.S. ----, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). Lechmere overruled an NLRB order which contradicted established Supreme Court precedent by extending protection under NLRA Sec. 8(a)(1) to union organizers who were not "employees" covered by the Act. See --- U.S. at ---- - ----, 112 S.Ct. at 845-46 (citing, inter alia, NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956)). The Lechmere Court rejected the Board's application of NLRA protections to nonemployee organizers, and reiterated the rule that "[o]nce we have determined a statute's clear meaning, we adhere to that determination under the doctrine of stare decisis, and we judge an agency's later interpretation of the statute against our prior determination." --- U.S. at ---- - ----, 112 S.Ct. at 847-48 (quoting Maislin Indus. Inc., v. Primary Steel, Inc., 497 U.S. 116, 130, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990)). Relying on Lechmere, SBCA contends that we are bound by our holding in SBN, absent en banc reconsideration of the issues.
 
 
 13
 Unlike the statutory scheme in Lechmere, which explicitly confined the protected class under NLRA Sec. 8(a)(1) to "employees," Sec. 111(f) is far from explicit as to the inclusion of satellite carriers. For this reason, we rested our decision in SBN not upon the statute's "clear meaning," but rather upon inferences drawn from the statutory scheme and upon our policy determination that satellite carriers should be included for the benefit of their rural customers. We left open the possibility that we might later consider a contrary rule. Noting that the Copyright Office had issued a contrary 1991 policy decision, and anticipating the promulgation of a new rule, we "express[ed] no opinion on the new rule's validity as applied prospectively." 940 F.2d at 1470 n. 4.
 
 
 14
 Because we did not address the "clear meaning" of Sec. 111(f) in SBN, this circuit is not precluded from revisiting our initial interpretation of the regulatory scheme in SBN. See Chevron, 467 U.S. at 842, 104 S.Ct. at 2781 (Court of Appeals erred by "adopt[ing] a static judicial definition of [the statutory term at issue] when it had decided that Congress itself had not commanded that definition"). A contrary result illogically would wed this circuit to the SBN decision, while all other circuits and the Supreme Court would be bound under Chevron to defer to the Copyright Office rule. Moreover, it would create a rush to the courthouse among parties wishing to litigate a statute's meaning before an agency has exercised its broad "knowledge respecting the matters subjected to agency regulations." Chevron, 467 U.S. at 844-45, 104 S.Ct. at 2782-83 (quoting United States v. Shimer, 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)).[8]
 
 III.
 
 15
 Having determined that SBN did not address the "clear meaning" of "cable system" under Sec. 111(f), we likewise hold that the Copyright Office's construction of "cable system" to exclude satellite carriers is neither arbitrary, capricious, nor contrary to the statute's "clear meaning." As discussed above, the Copyright Office's exclusion of satellite carriers from the definition of "cable systems" is an interpretation based on reasonable inferences drawn from statutory scheme and policy. Although such an interpretation is not "the only one it permissibly could have adopted ... or even the reading the court would have [and indeed has] reached ... in a judicial proceeding," see Chevron, 467 U.S. at 843 n. 11, 104 S.Ct. at 2781 n. 11, neither can it be said that the interpretation contradicts Congress's "clear meaning." Indeed, virtually nothing in the section's legislative history suggests that Congress even contemplated the entrance of satellite technology into the cable industry. See 57 Fed.Reg. at 3291.[9]
 
 
 16
 Accordingly, we REVERSE the decision of the district court, and REMAND for entry of judgment on behalf of the Copyright Office.
 
 
 
 *
 Honorable William B. Hand, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 Title 17 U.S.C. Sec. 111 provides for the compulsory licensing scheme, stating:
 [S]econdary transmissions to the public by a cable system of a primary transmission made by a broadcast station ... shall be subject to compulsory licensing upon compliance with [procedural requirements and payment of mandatory royalties] where the carriage of the signals comprising the secondary transmission is permissible under the rules, regulations or authorizations of the Federal Communications Commission.
 17 U.S.C. Sec. 111(c)(1) (emphasis added).
 
 
 [2]
 In the Satellite Home Viewer Act of 1988, Congress created a compulsory licensing scheme for satellite carriers by adding Sec. 119 to the Copyright Act. Pub.L. No. 100-667, Secs. 201-02, 102 Stat. 3949-58 (1988). However, Section 119--which will expire on Dec. 31, 1994--offers little guidance in interpreting Sec. 111 because the accompanying House Report stated:
 [N]othing in this Act is intended to reflect any view as to the proper interpretation of section 111 of this title prior to enactment of this Act, or after this Act ceases to be effective.... In particular, nothing in this Act is intended to reflect any view concerning whether ... an entity that retransmits television broadcast signals by satellite to private homes could qualify as a "cable system" under section 111(f).
 H.R.Rep. No. 100-887(I). 100th Cong.2d Sess. at 27 (1988), U.S.Code Cong. & Admin.News 1988 at 5527, 5630.
 
 
 [3]
 We based our broader reading of Sec. 111(f) primarily on the section's restriction of "secondary transmissions" to transmissions by " 'cable system[s]' not located in whole or in part within the boundary of the forty-eight contiguous States, Hawaii, or Puerto Rico." 940 F.2d at 1470. This definition suggested to us that a cable system might be located partly in Alaska and partly in another state, and thus need not be located within a single state
 
 
 [4]
 The Copyright Office added to 37 C.F.R. Sec. 201.17 paragraph (k), which provides:
 Satellite carriers and MMDS not eligible. Satellite carriers, [and] satellite resale carriers ... are not eligible for the cable compulsory license based upon an interpretation of the whole section 111 of title 17 of the United States Code.
 
 
 [5]
 A cable system's "headend" is its control center, from which a cable company receives signals and then transmits them, by coaxial cable, to the company's subscribers. See generally Eastern Microwave, Inc. v. Doubleday Sports, Inc., 691 F.2d 125, 128 (2d Cir.1982), cert. denied, 459 U.S. 1226, 103 S.Ct. 1232, 75 L.Ed.2d 467 (1983); United States v. Norris, 833 F.Supp. 1392, 1394 (N.D.Ind.1993)
 
 
 [6]
 The "distant signal equivalent" is a figure used to calculate the percentage of gross receipts owed by a cable system to the copyright holders of programs broadcast. The figure takes into account the number of "distant," i.e. not receivable via antenna, independent, network and educational stations carried. See e.g., Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of America, Inc., 836 F.2d 599, 608-09 (D.C.Cir.), cert. denied, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988)
 
 
 [7]
 The regulatory scheme at issue in Chevron required that "nonattainment" states under the Clean Air Act establish a permit program regulating "new or modified major stationary sources" of air pollution. 467 U.S. at 840-42, 104 S.Ct. at 2780-81. Under an Environmental Protection Agency (EPA) rule, however, "nonattainment" states could adopt a plantwide definition of the term "stationary source," enabling plants with several pollution-emitting devices to circumvent certain EPA permit conditions. Id. The D.C.Circuit had invalidated the rule, based on its previous holding in ASARCO, Inc. v. EPA, 578 F.2d 319 (D.C.Cir.1978). Natural Resources Defense Council, Inc. v. Gorusch, 685 F.2d 718, 727 (D.C.Cir.1982); see also ASARCO, 578 F.2d at 325-27 (rejecting EPA's application of same rule in similar air-quality program)
 
 
 [8]
 We find further support for our decision in Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir.1993), which addressed a challenge to HHS regulations interpreting the "treating physician rule" used to evaluate disability claims. The Second Circuit upheld the new HHS regulations even though they conflicted with prior circuit precedent, because "[n]ew regulations at variance with prior judicial precedents are upheld unless 'they exceed[ ] the Secretary's authority [or] are arbitrary and capricious.' " 3 F.3d at 568 (quoting Heckler v. Campbell, 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983))
 
 
 [9]
 The subsequent addition of Sec. 119 to the Copyright Act, see supra n. 2, creating a compulsory licensing scheme for satellite carriers, makes it further apparent that Sec. 111 did not plainly address the inclusion of satellite carriers. If it had, Sec. 119 would have been unnecessary