**COLUMBIA PICTURES INDUSTRIES, INC., Tristar Pictures, Inc., Paramount Pictures Corp., Metro–Goldwyn–Mayer, Inc., Twentieth Century Fox Film Corp., Universal City Studios, Inc., The Walt Disney Company and Warner Bros., Inc., Plaintiffs,**

v.

**LIBERTY CABLE, INC., Defendant.**

No. 94 Civ. 8311 (HB).

United States District Court,
S.D. New York.

March 18, 1996.

Harvey Shapiro, Dennis Lane, Sargoy, Stein, Rosen & Shapiro, New York City, for Plaintiffs.

Robert Begleiter, Eliot Spitzer, Constatine & Partners, New York City, W. James MacNaughton, Woodbridge, New Jersey, for Defendant.

### DECISION and ORDER

BAER, District Judge.

Plaintiffs Columbia Pictures Industries, Inc., et al. allege that defendant Liberty Cable, Inc. infringed copyrights owned by plaintiffs when defendant failed to file semi-annual statements of account and make royalty fee payments to the Copyright Office as required under 17 U.S.C. § 111(d). Plaintiffs complain that the method defendant employed for filing and calculating royalty payments deprived plaintiffs of substantial royalties to which they are entitled. Defendant maintains that it operates over 100 separate satellite master antenna television systems ("SMATVs") within New York City and that it filed properly separate statements of account for each system and calculated the appropriate royalty fees.

I heard this bench trial on September 18th and 19th, 1995. Thereafter, both parties submitted post-trial briefs. For the reasons that follow, I find that plaintiffs have carried their burden of proof and demonstrated that defendant engaged in the secondary transmission of plaintiffs' copyrighted works and that defendant willfully failed to file statements of account and make royalty fee payments to the Copyright Office as required.

## I. *Background*

Plaintiffs are each the owners, co-owners or exclusive licensees of public performance, distribution, display and other copyright rights in original works of authorship which are copyrightable subject to the laws of the United States. Defendant owns and operates satellite master antenna television ("SMATV") systems in New York City and provides cable programming services to paying subscribers.[1] Defendant has been in operation since 1986 and is the only meaningful competitor to the traditional franchised cable companies located in New York City.[2] Defendant maintains that it operates over 100 separate SMATV systems throughout metropolitan New York City and that it uses satellite receiving antennas, tower antennas and microwave antennas to receive broadcast television signals and transmit programming to its customers.

Defendant provides services to its customers in a mode reminiscent of the way cable television was first provided in the mid-1970's. Each of defendant's systems includes the following components: (1) processing and amplification equipment to convert the received television signals for retransmission on coaxial cable to subscribers, generally termed the "head end"[3]; and (2) a network of coaxial cables from the head end to each individual subscriber. Most Liberty subscribers receive broadcasting from local television stations as well as from four superstations[4], and the general pay-television programming line-up.[5]

Generally, each system consists of a single building. According to the defendant, Liberty systems are not contiguous with each other, there are no coaxial cables interconnecting two of defendant's systems and none of

---

1. Liberty's subscribers include residents of multifamily buildings and the occupants of hotels and office buildings.

2. In lower Manhattan, below West 72nd Street and East 86th Street, Liberty competes with Time Warner Cable of New York City. Liberty competes with Paragon Cable of Manhattan throughout the rest of the City.

3. A head-end or headend demodulates the broadcast signals from the original broadcast carriers frequencies and generates duplicates of the sig-

nals it receives. The headend then conditions the signals it receives and rebroadcasts them to subscribers locally through a low end antenna and local cable system. *See Better T.V., Inc. of Dutchess County, N.Y.*, 31 FCC2d 984, 1002–03 (1970).

4. The four superstations are KTLA (Los Angeles), WGN (Chicago), WSBK (Boston) and WTBS (Atlanta).

5. This includes the pay services, HBO, Cinemax, Showtime and The Movie Channel.

the defendant's systems use public streets or rights-of-way. In situations where a system is composed of more than one building, the building which houses the reception antenna is connected by coaxial cable to a nearby building that lacks a reception antenna. Defendant considers all of the buildings which receive service from a microwave reception antenna and which are connected by coaxial cable to be part of the same SMATV system.

There is no dispute that defendant is a cable system for purposes of the Copyright Act. The parties dispute, however, whether defendant is a cable system as defined by the F.C.C. Plaintiffs allege that the defendant is a cable system within the F.C.C.'s definition and that defendant violated the compulsory licensing plan established by the Copyright Office.

Pursuant to 17 U.S.C. § 111(d), the Copyright Office established a compulsory licensing plan which compels copyright owners to forego private licensing agreements with cable systems for the system's retransmission of their work in exchange for a requirement that a cable system file semi-annual statements of account and royalty fee payments with the Copyright Office. 17 U.S.C. § 111(d). Plaintiffs claim that defendant neither filed statements of account with the Copyright Office nor made appropriate royalty payments for all building tenants or addresses it serves. Although Liberty has been in operation since 1986, it did not file any statements of account until August of 1994. At that time, the defendant filed statements for the 1992/1, 1992/2, 1993/1, 1993/2 and 1994/1 semi-annual accounting periods.[6] Statements for the 1991/2, 1992/1, 1992/2, 1993/1, 1994/1 and 1994/2 were filed in April of 1995. Each statement filed with the Copyright Office reported information for a single building tenant or address served by Liberty Cable in New York, New York.[7]

Plaintiffs contend that the individual statements filed by defendant are a willful violation of 17 U.S.C. § 111(d) and are based on defendant's artificial fragmentation of its cable system in an attempt to pay reduced royalties.

## II. *Discussion*

### a. *Calculation of Royalty Fees and Definition of a Cable System.*

Pursuant to the cable compulsory licensing plan, 17 U.S.C. § 111(d), cable systems are permitted "to transmit copyrighted television broadcasts so long as they pay royalties and abide by the procedures of the licensing schedule." *See Satellite Brdcstg. and Comm. Ass'n. v. Oman,* 17 F.3d 344, 346–47, *cert. denied,* —— U.S. ——, 115 S.Ct. 88, 130 L.Ed.2d 40 (1994). Section 111(d) of the Copyright Act specifically outlines the royalty payment and filing procedures which a cable system is to follow when it engages in the secondary transmission of copyrighted work. This payment plan, as outlined in the statute, requires a cable system to file semi-annual statements of account with the Copyright Office and pay royalty fees in accordance with the statutory formula. *See* 17 U.S.C. §§ 111(d)(1)(A)–(D).

The statute outlines three royalty fee payment levels. It is the cable system's obligation to determine which of the three levels it fits into on the basis of its semiannual gross receipts. *Id.* The largest cable systems are known as "Form 3" systems and have gross receipts in excess of $292,000. Form 3 systems are required to pay a royalty fee calculated as a percentage of gross receipts based on a portion of distant signals used.[8] *See generally,* 17 U.S.C. § 111(d)(1)(B)(i)–(iv).

Smaller cable systems are classified as either a Form 1 system or a Form 2 system.

---

**6.** The accounting periods accrue semi-annually. The deadline for filing statements of account for the first half of the year, January to June, is August 29 of the applicable year. For the second half of the year, July to December, the deadline is March 1 of the subsequent year.

**7.** In the statements of account filed in 1994/2, Liberty reported information for multiple building tenants or addresses in New York, New York.

**8.** Distant signals refers to the number of television stations that the cable system carries from other (distant) cities. Tr. at 17. Super stations such as WTDS in Atlanta are carried by satellite outside of their home market. *Id.*

Form 1 systems are those cable systems which receive a total of $80,000 in gross revenues and Form 2 systems are those systems which have actual gross receipts in excess of $80,000 but less than $160,000. 17 U.S.C. §§ 111(d)(1)(C), (D). Both Form 1 and Form 2 systems are required to pay flat royalty fees calculated as a percentage of gross receipts regardless of the number of distant signals they carry. *Id.*

Because Form 3 systems pay royalty fees based on their total number of subscribers and the number of distant stations which they carry, Form 3 systems pay royalties at a much higher rate than Form 1 or 2 systems. This creates an incentive for cable systems to report lower gross receipts, thereby placing them into either the Form 1 or 2 category. *See generally, Cablevision Systems Dev. Corp. v. MPAA,* 836 F.2d 599 (D.C.Cir.1988), *cert. denied* 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988).

Section 111(f) of title 17 of the United States Code defines a cable system as follows:

A 'cable system' is a facility, located in any State, Territory, trust Territory, or Possession, that in whole or in part receives signals transmitted or programs broadcast by one or more television broadcast stations licensed by the Federal Communications Commission, and makes secondary transmissions of such signals or programs by wires, cables, microwaves, or other communications channels to subscribing members of the public who pay for such service. For purposes of determining the royalty fee under subsection (d)(1), two or more cable systems in contiguous communities under common ownership or control or operating from one head-end shall be considered as one system. *Id.*

The parties here dispute the method defendant employed to calculate the royalty fee payments it owes for the secondary transmission of plaintiffs' copyrighted works.

Plaintiff argues that the final sentence in section 111(f) cited above is a Congressional safeguard designed to thwart the artificial fragmentation of a cable system. In addition, plaintiffs rely on a similar provision contained within the Code of Federal Regulations which states that for the purpose of calculating royalty fee payments, a cable system is:

a facility ... that in whole or in part receives signals transmitted or programs broadcast by one or more television broadcast stations licensed by the [FCC] and makes secondary transmissions of such signals or programs by wires, cables, microwave, or other communication channels to subscribing members of the public who pay for such service.... For ... the purposes of ... these regulations, an 'individual' cable system is each cable system recognized as a distinct entity under the rules, regulations, and practices of the [FCC].... For these purposes, two or more cable facilities are considered as one individual cable system if the facilities are either: (A) in contiguous communities under common ownership or control or (B) operating from the one headend.

*See* 37 C.F.R. § 201.17(b)(2) (1995).

Applying the definition of a cable system as stated above to the method by which royalty fee payments are calculated and made, plaintiffs contend that Congress sought to ensure that cable systems did not artificially fragment themselves in order to reduce their reportable gross receipts and the royalty revenues derived therefrom. Plaintiffs contend that defendant artificially fragmented its cable system into smaller individual systems so as to enable it to make lower royalty fee payments to the Copyright Office in wilful violation of section 111(d).

In contrast, defendant argues that because of the way it operates, it is not "one" cable system, rather it is many small and separate SMATV systems each of which operates as distinct "community unit." To substantiate this argument, defendant cites the fact that each SMATV system is separately licensed by the FCC as a microwave receive site and that each system is installed pursuant to a separately negotiated contracts with building owners. According to defendant, no two installation contracts are identical and not all systems offer the same programming. Thus, because few of defendant's buildings, or units, are actually adjacent to each other,

defendant argues that it is entitled to file separate statements of account for each of its New York City units which are not adjacent to each other.

### b. *Defendant's New York City facilities are a single cable system for 17 U.S.C. § 111(d) purposes.*

■ Based on the evidence presented at trial and the arguments put forth by counsel in their post-trial submissions, I find that defendant's New York City systems should not be treated differently than a traditional cable system. Further, pursuant to the definition of a cable system in both 17 U.S.C. § 111(f) and 37 C.F.R. § 201.17(b)(2), I find that defendant is required to file a single statement for all of its SMATV systems. Accordingly, I conclude that defendant's New York City facilities constitute a single cable system for 17 U.S.C. § 111(d) purposes.

Section 111(f) of title 17 provides alternative factors to be considered in the determination of whether a system should be treated as a single system for royalty fee payments. If a cable system is "under common ownership or control or operating from one headend" it is considered a single cable system. 17 U.S.C. § 111(f). Here, defendant qualifies under both alternatives; each of the SMATV systems defendant operates are under common ownership or control and each operates from a single headend.

Although defendant argues that each system it operates at various building sites is the result of a contract negotiated individually with building owners and takes six to twelve months to complete, defendant does not dispute that each contract is negotiated by the same entity, Liberty Cable. Further, defendant does not dispute that a company or entity other than defendant, installs the equipment and cable necessary to transmit broadcasting signals to paying subscribers. It is clear to me that all of defendant's New York facilities are under its ownership or control.

Defendant argues that its buildings are not served by the same headend, yet I find the contrary is true. Judge Preska determined recently that defendant "receives satellite and broadcast signals at its headend facility located on East 95th Street in Manhattan." *Liberty Cable Co., Inc., et al. v. The City of New York, et al.,* 893 F.Supp. 191, 196 (S.D.N.Y.1995), *aff'd.* 60 F.3d 961 (2d Cir. 1995). Defendant receives four superstation signals at its East 95th Street headend which are then transformed into a format for local distribution. Tr. at 124. Defendant distributes programming from the single headend to individual buildings and subscribers via feeder, distribution cable a microwave. Tr. at 125, *see also,* Ex. 57. Thus, I conclude that defendant's broadcast signals originate from its headend, and that this is the centralized point for defendant's distribution network.

It follows, therefore, that pursuant to section 111(d), defendant is required to file a single statement of account with the Copyright Office. The Copyright Office previously addressed the issue of filing requirements for SMATV systems. Subsequent to a rulemaking procedure, the Copyright Office concluded that SMATVs are required to file a single statement of account for all facilities served in the same or contiguous communities. Ex. 51 at 31596.

### c. *Defendant's failure to file was willful.*

■ I turn now to whether defendant's actions in transmitting to the public plaintiffs' works was willful and repeated. Pursuant to § 111(c)(2)(B), plaintiff must prove by a preponderance of the evidence that the defendant engaged in the "willful or repeated secondary transmission to the public" of television signals carrying plaintiffs' copyrighted works. 17 U.S.C. § 111(c)(2). Specifically, the statute states:

the willful or repeated secondary transmission to the public by a cable system of a primary transmission made by a broadcast station . . . and embodying a performance or display of a work is actionable as an act of infringement, and is fully subject to the remedies provided by sections 502 through 506 and 509 . . .

(B) where the cable system has not deposited the statement of account and royalty fee required by section (d).

*Id.* I find that plaintiffs carried their burden and have proven that defendant's failure to file was willful.

In assessing whether defendant's action, or inaction, rises to the level of willfulness, I am to determine whether defendant was grossly negligent. The Second Circuit defined the standard of gross negligence to be:

> indifference to present legal duty and utter forgetfulness of legal obligations, so far as other persons may be affected, ... a manifestly smaller amount of watchfulness and circumspection than the circumstances require a person of ordinary prudence.

*See Doe v. New York City Dep't. of Social Services,* 649 F.2d 134, 143 n. 4 (2d Cir.1980) (citations omitted). Applying this definition to the facts before me, I find that defendant's inaction clearly rises to this standard. Plaintiff has demonstrated that on several occasions, defendant could have or should have known of its responsibilities under the Cable Compulsory Licensing Act and that defendant continuously disregarded its obligations.

At trial, defendant's president, Peter Price, testified that defendant has continuously retransmitted the television signals of the four superstations for several years. Tr. at 131–32. In addition, plaintiffs demonstrated that defendant failed to file a statement of account and make the requisite royalty fee payments thereon for this same period. During this same time period, defendant, on several occasions, became aware of or had reason to know of the filing requirements. Yet, at no point in time did defendant proactively seek to file a statement of account or make a payment to the Copyright Office.

In 1986 the Copyright Office addressed the duties of SMATV cable system operators. The Office issued a notice of rulemaking in 1986 and solicited comments then and in 1988 from defendant and other SMATV cable system operators regarding the definition of cable systems. *See* Tr. at 80–84; *see also* Ex. 51. Defendants responded to the notice of rulemaking and filed comments about the general obligations of SMATV operators through their counsel, Donald McNaughton. Tr. at 84–87. Yet, at no point in time during this process did defendant file a statement of account or make royalty fee payments. Tr. at 132–35.

Mr. McNaughton also contacted the Copyright Office, on behalf of defendant, to determine the procedure for filing statements of account and making royalty fee payments. Mr. Prince was aware of Mr. McNaughton's two calls, one in 1992 and one in 1993, to the Copyright Office. *See* Tr. at 134. In 1993 Mr. Prince received two memorandums detailing the filing requirements and the dates by which filings and payments were to be made. Tr. at 136–38; Exs. 65, 66. Yet, again, defendant did not act and did not file with the Copyright Office.

Beyond these three examples of defendant's disregard for its filing and payment obligations, once defendant was aware of its non-compliance, it attempted to minimize compliance requirements. Defendant hired Howard Barr of Pepper & Corazzini, a law firm specializing in communications law, to aid in making the appropriate filings and royalty payments. Mr. Barr testified that he analyzed two options for defendant, a single filing for all of defendant's buildings and individual filings on a building by building basis. Tr. at 45–48. Mr. Barr engaged in conversations with the Copyright Office regarding the filing procedure and also looked to the statutory language. Mr. Barr then testified that he relied on the oral advice of a Copyright Office employee and filed for each of defendant's buildings separately. Tr. at 48–49, 50–55; Ex. 55.

Based on the statutory language and exhibit 55, Mr. Barr's notes from his conversation with the Copyright Office, defendant's reliance on this telephone conversation was, at best, misplaced.[9] Clearly the statutory language required the defendant to file a single statement of account for all of its systems and that a building by building filing system was inappropriate. A good faith belief as to what the law should be, or what you want the law to be, is not enough. Accordingly, since defendant should have known and was in fact specifically made aware of its

---

**9.** This is not the first problem for Liberty with a regulatory agency. *See generally* Edward Lewine, "Peter Price, Park Avenue Guerrilla," N.Y. Times, March 17, 1996 at C4.

filing obligations several times over the last eight years, I find that defendant's inaction meets the gross negligence test and thus, that defendant's failure to file statements of account and make royalty fee payments to the Copyright Office was willful.

### d. *Damages.*

For the reasons stated above, I find that defendant infringed plaintiffs' copyrighted works when it engaged in the repeated and willful secondary transmission of plaintiffs' works. Accordingly, plaintiffs are entitled to recover for this willful violation. Damages should be assessed at triple the royalty fees owed plus attorneys' fees and the costs incurred in bringing this litigation.

### III. *Conclusion*

For the foregoing reasons, I find that plaintiffs have proven that defendant engaged in the secondary transmission of plaintiffs' copyrighted works and repeatedly and willfully failed to file semi-annual statements of account and make royalty fee payments as required pursuant to 17 U.S.C. § 111(d). The matter is referred to Magistrate Judge Katz, the Magistrate Judge assigned to this case, for an assessment of damages in conformity with this opinion.

SO ORDERED.